FILED
2019 Aug-13  PM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JOSHUA OTWELL, an individual, DANNA LEE OTWELL, an individual,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No.: 4:19-cv-01120-ACA** |
| **v.** | ) ) | |
| **HOME POINT FINANCIAL CORP., a Corporation;** | ) ) ) | |
| **Defendant.** | ) ) ) ) | **JURY DEMAND** |

## AMENDED COMPLAINT

**COME NOW** the Plaintiffs Joshua Otwell and Danna Lee Otwell (hereinafter "Plaintiffs") and hereby amend their complaint pursuant to FRCP 15a(1)(B) as this is filed within 21 days of being served the Defendant's Motion To Dismiss [Doc. 3] which was filed on July 23, 2019.

Given the almost knee jerk filing of motions to dismiss replete with inflammatory language, the reciting of "shotgun pleadings" over and over, and attributing bad motives to counsel for consumers, the undersigned hope to avoid all of the above with this lengthy amendment.

Quite often the original complaint is attacked for providing too little detail. Then when amended, the same mortgage companies that complained about too

little information, now complain that there are too many paragraphs. It is exceptionally hard to find the right amount of detail to cause the mortgage companies to say "this is just right" but that is the intent of the Plaintiffs.

Plaintiffs submit this pleading and look forward to the Defendant answering it so discovery can begin in this case.

Plaintiffs Amended Complaint[1] against Defendant states as follows:

## JURISDICTION AND VENUE

1.    This is an action brought by a consumer for violations of the Real Estate Settlement Procedures Act[2], 12 U.S.C. § 2605 ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ("FDCPA") and state law by Defendant Home Point including an illegally scheduled foreclosure on June 13, 2019 that Defendant cancelled after the Original Complaint was filed.

2.    Venue is proper in this Court as Defendant Home Point does business in this Judicial District.

## PARTIES

3.    The Plaintiffs, Joshua Otwell and Danna Lee Otwell, (hereinafter "Plaintiffs"), are natural persons who reside within this Judicial District.

---

[1] This Amended Complaint complies with FRCP 8 including FRCP 8(a)(3) and FRCP 8(d)(2)&(3), which allow for inconsistent pleading. No discovery has occurred and many facts are known only to Defendant but will be discovered by Plaintiff pursuant to the rules of discovery.

[2] Any reference to RESPA or FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

4.    Defendant Home Point Financial Corp.   ("Defendant" or "Home Point Financial Corp.") in this action is a foreign corporation doing business in this Judicial District, and is considered a "servicer" under RESPA as well as a "debt collector" under the FDCPA.

## INTRODUCTION

5.    The Plaintiffs entered into a Trial Payment Plan with Defendant on or about September 14, 2018, which would lead to a permanent modification of their loan.

6.    All payments have been made pursuant to the Trial Payment Plan ($1609.27 on October 1, 2018, November 1, 2018, and December 1, 2018) and even beyond the required payment dates.

7.    No permanent modification has been offered by Defendant Home Point despite Plaintiffs making the payments.

8.    Plaintiffs continued to make the payments but Defendant Home Point will not accept further payments in order to claim a right to foreclose.

9.    Defendant scheduled a foreclosure sale after declaring Plaintiffs in default but Defendant had no right to do so and failed to accelerate the loan, a condition precedent to foreclosure.

10.   The foreclosure sale has been cancelled.

11.    This suit is brought for money damages against Defendant Home Point for its violations of state and federal laws.

12.    Since Defendant Home Point has represented to this Honorable Court that the foreclosure sale has been canceled (and by implication has not been reset), then Plaintiffs do not seek a declaration of the rights of Defendant Home Point to foreclose as Defendant Home Point argues such is moot. [Doc. 3 at 13].

## FACTS

### The Loan At Issue

13.    The loan at issue in this case is secured by the residence of Plaintiffs at 525 Fern Creek Drive, Springville, Alabama 35146.

14.    On or about August 11, 2016, a company called Stonegate Mortgage Corporation allegedly received the mortgage as evidenced by an assignment of mortgage filed in St. Clair County Probate Court (attached as Doc. 3-2).

15.    As no proof has been offered to Plaintiffs that this actually occurred, it is merely an allegation by Defendant Home Point.

### Foreclosure On January 17, 2017 And State Court Lawsuit

16.    On January 17, 2017, Stonegate foreclosed on Plaintiffs.

17.   On June 30, 2017, Stonegate filed a complaint for ejectment, which is the cause of action under Alabama law to "evict" a former homeowner after a foreclosure.

18.   On November 13, 2017, Plaintiffs [Defendants in the state court action] filed an answer and counterclaim against Stonegate.

19.   On February 9, 2018, Stonegate filed an answer to the counterclaim.

20.   On February 20, 2018, Stonegate filed a joint motion to continue the trial due to settlement talks.

21.   On July 26, 2018, Stonegate filed another joint motion to continue the trial due to settlement discussions.

22.   On August 30, 2018, Stonegate filed "Rescission and Nullification of Foreclosure Sale" in the Probate Court of St. Clair County, Alabama.

23.   This declared, "The Mortgage Foreclosure Deed or any other deed executed pursuant to the January 17, 2017, foreclosure sale is hereby null and void."

24.   On September 12, 2018, Stonegate filed a motion to dismiss without prejudice.

25.   On September 17, 2018, the trial court dismissed the entire case without prejudice.

### Relationship Between Stonegate And Defendant Home Point

26.   Defendant argues in its brief supporting its motion to dismiss that it merged Stonegate into it and references a website link.  [Doc. 2 at 2].

27.   The link is https://www.homepointfinancial.com/news/stonegate/

28.   This webpage on Defendant Home Point's website states in relevant part as follows:   "**ANN ARBOR, MI – (May 31, 2017)** – Home Point Financial Corporation ("Home Point") today announced that it has completed its acquisition of Stonegate Mortgage Corporation ("Stonegate Mortgage")."

29.   On May 31, 2017, Stonegate filed a "Foreign Corporation (Business or Non-Profit) Certificate of Withdrawal" with the Alabama Secretary of State.

30.   This document represented that as of the date of the filing, Stonegate was "no longer transacting business in Alabama."

31.   Oddly, this was <u>prior</u> to filing the ejectment lawsuit described above.

32.   No indication was given that Stonegate has been acquired or merged into Defendant Home Point.

33.   The trial court in the state court lawsuit was never advised by Stonegate (which Defendant Home Point claims it has purchased or merged into) that it no longer existed and no longer was allowed to do business in Alabama.

34.   This pattern of deception is demonstrated throughout the conduct of Defendant Home Point as shown below.

**Trial Payment Plan (TPP) Between Plaintiffs And Defendant Home Point**

35.    The Plaintiffs entered into a Trial Payment Plan with Defendant on or about September 14, 2018.

36.    All payments have been made pursuant to the Trial Payment Plan ($1609.27 on October 1, 2018, November 1, 2018, and December 1, 2018).

37.    No permanent modification has been offered by Defendant Home Point despite Plaintiffs making the payments.

38.    Plaintiffs continued to make the payments but Defendant Home Point began rejecting the payments this year

**Plaintiffs Are Consumers Under The FDCPA**

39.    15 USC Section 1692a(3) defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."

40.    Plaintiffs are natural persons.

41.    Defendant Home Point alleges that Plaintiffs owe the debt described in this Amended Complaint.

42.    Plaintiffs qualify as "consumers" under the FDCPA.

**The Loan/Debt At Issue Is A Consumer Loan Under The FDCPA**

43.    The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily

for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 USC Section 1692a(5).

44.   Plaintiffs took out this loan for their home, which is primarily for "personal, family or household purposes."  This is where Plaintiffs live –- it is not commercial property.

45.   The debt at issue qualifies as a debt under the FDCPA.

**Defendant Home Point Is A Debt Collector Under The FDCPA**

46.   Oddly, in Defendant Home Point's brief [Doc. 2] it suggests that it is not a debt collector and attacks the original complaint for not properly pleading it is a debt collector.  [Doc. 2 at 10-12].

47.   This is puzzling as Defendant Home Point *routinely admits*[3] it is a debt collector.

48.   It does so in its communications with Plaintiff.

49.   And Plaintiffs have and continue to properly allege that Defendant Home Point is a debt collector.

50.   This is the initial pleading and sufficiently puts Defendant Home Point on notice of its claim and has satisfied the plausibility test of pleading.

---

[3] Its agent, the foreclosure debt collection firm of Rubin Lublin, for whose acts Defendant Home Point is fully and completely liable for, often is evasive on whether it is a debt collector and fails to follow the FDCPA as demonstrated below.  But Defendant Home Point in its direct communications freely admits it is a debt collector.

51.   First, Defendant Home Point has as its principal business the collecting of debts.

52.   Second, Defendant Home Point freely admits that it is a debt collector.

53.   Third, the loan was allegedly in default when Defendant Home Point claims it received the loan.

54.   And this is true even when Stonegate (which Defendant Home Point claims to have merged into itself) allegedly took over the loan.

55.   15 USC Section 1692a(6) states in relevant part:  "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

56.   Defendant Home Point uses the instrumentality of interstate commerce and the US mail system.

57.   Defendant Home Point does this by placing calls (interstate and otherwise).

58.   Defendant Home Point does this by mailing letters.

59.   Defendant Home Point does this by credit reporting.

60.   These are all done to collect debts.

61.   The principal purpose of Defendant Home Point is collecting debts.

62.   Additionally, as it is not known who actually owns the loan, it is not known whether Defendant Home Point or some other company allegedly owns this loan.

63.   Based upon information and belief, Plaintiffs allege that Defendant Home Point regularly collects or attempts to collect debts owed to another entity.

64.   In the correspondence between Defendant Home Point and Plaintiffs, Defendant Home Point freely admits it is a debt collector and gives required disclosures under the FDCPA.

65.   These are not all the examples but are enough to suffice for notice pleading.

66.   In the August 24, 2018 TPP letter, Defendant Home Point stated, "Home Point Financial Corporation is a debt collector."

67.   Lest there be any doubt about what Defendant Home Point was doing, it told the Plaintiffs:  "Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

68.   The principal business purpose of Defendant Home Point is collecting debts.[4]

69.   The October 16, 2018 mortgage statement from Defendant Home Point has the following statement:   "Home Point Financial Corporation is a debt

---

[4] Without discovery, Plaintiffs do not know the percentage of loans (or the raw number of loans) collected that are in default and/or owed to others.  Based upon information and belief, it is a high percentage (and/or number) of loans more than sufficient to qualify Defendant Home Point as a debt collector under the FDCPA.

collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

70.   The November 16, 2018 mortgage statement from Defendant Home Point has the following statement:  "Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

71.   The December 5, 2018 mortgage statement from Defendant Home Point has the following statement:  "Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

72.   There was no January 2019 mortgage statement provided to Plaintiffs by Defendant Home Point.

73.   The February 18, 2019 mortgage statement has the exact language described above ("Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose.").

74.   As did a mortgage statement dated two days later – February 20, 2019[5] – that stated, "Home Point Financial Corporation is a debt collector.  Home

---

[5] This statement on the 20th – two days after the one on February 18, 2019 – lists an amount owed that is over $3,000 less.  This type of confusing and non-sensical statements is consistent with how Defendant Home Point has treated charges, fees, and receipt of payments from Plaintiffs.

Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

75. On February 21, 2019, Defendant Home Point sent a notice of default letter to Plaintiffs and admitted, "This communication is from a debt collector and is an attempt to collect a debt, any information obtained will be used for that purpose."[6]

76. The March 18, 2019 statement also said, "Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

77. As did the April 16, 2019 and the May 16, 2019 mortgage statements.

78. No other mortgage statements have been received by Plaintiffs from Defendant Home Point.

79. At no time has Defendant Home Point ever told Plaintiffs that Defendant Home Point was not a debt collector or was not collecting a debt.

80. Looking at the most recent statement, May 16, 2019, it states that "As of 05/16/2019 you are 1,079 days delinquent on your mortgage."

81. This helps us to understand when Defendant Home Point claims the loan went into default which is clearly before Defendant Home Point or Stonegate took over this loan.

---

[6] This is the so-called "Mini Miranda" required by 15 USC 1692e(11).

82.   Subtracting 1,079 days from May 16, 2019, takes us back to June 1, 2016.

83.   The earliest statement from Defendant Home Point is October 16, 2018, and it shows a due date of February 1, 2016.

84.   It states that as of October 16, 2018, the loan was 988 days late, which would take us back to February 11, 2016.

85.   Notice all of these dates are <u>before</u> the date that Defendant Home Point alleges Stonegate received the mortgage.  "The Mortgage was assigned to Stonegate Mortgage Corporation on **August 11, 2016**, as evidenced by an assignment recorded in the Office of the Probate Judge of St. Clair County in Book 2016, Page 30477 (the "Assignment"). A true and correct copy of the Assignment is attached hereto as Exhibit "B". Home Point is the successor by merger to Stonegate Mortgage Corporation."   [Doc. 2 at 2](Emphasis added).

86.   Thus this loan was in default (according to Defendant Home Point) before Defendant Home Point or Stonegate received it.

87.   On June 10, a few days before the scheduled foreclosure, Defendant Home Point wrote to Plaintiffs and admitted, "Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

88.   Even after this lawsuit was filed (June 12, 2019), Defendant Home Point has written to Plaintiffs directly[7] demanding payment.

89.   The day the lawsuit was filed, Defendant Home Point knew through its counsel (Rubin Lublin, LLC) of the lawsuit.   A conversation between the undersigned and Timothy P. Pittman (counsel for Defendant in this case) occurred that morning and was documented by an email sent 8:45 am.

90.   By 11:59 am Victor Kang ("Foreclosure Partner") emailed the undersigned to state the foreclosure was cancelled and "we have notified the client [Defendant Home Point] of the pending litigation."

91.   Thus it is surprising – and illegal – that Defendant Home Point sent a letter directly to Plaintiffs on July 13, 2019, demanding payment.

92.   This letter also states who Defendant Home Point is and the purpose of the letter:  "Home Point Financial Corporation is a debt collector.  Home Point Financial Corporation is attempting to collect a debt and any information will be used for that purpose."

93.   Defendant Home Point is an admitted debt collector seeking to collect this personal consumer debt from Plaintiffs, both seeking money from the Plaintiffs and seeking to take Plaintiffs' home.

---

[7] This is a gross violation of the FDCPA to write to represented consumers but we are seeing this happen more and more with debt collectors who are sued.

**Letter Declaring Plaintiffs In Default But There**

**Is No Letter Declaring The Loan Accelerated**

94. On February 21, 2019, Defendant Home Point sent a letter to Plaintiffs informing them that they were in default.

95. This loan noted that if Plaintiffs did not pay $60,255.29 by March 26, 2019, then this "<u>may</u> result in acceleration of all sums due . . ."(emphasis added).

96. Thus, acceleration was not stated to have happened or that it would happen – instead that it was merely a possibility.

97. This letter is false in many respects, such as claiming that "You have the right to assert in any foreclosure proceeding, the non existence of a default or any other defense you have."

98. Defendant Home Point knows that the only foreclosure in Alabama that it has ever used or contemplated using is a non judicial foreclosure and there is no such thing as "foreclosure proceeding" as the Alabama Supreme Court has made clear.

99. There is only the auction (foreclosure sale) and the delivery of the deed.

100. This false representation made it sound to consumers like Plaintiffs that they could wait till the foreclosure proceeding to assert their defenses when Defendant Home Point knew this was false.

101. There was no acceleration letter.

102.   The loan has not been accelerated.

103.   The mortgage states in paragraph 18 that "If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale…"

104.   No such "immediate payment" was demanded under paragraph 9 of the mortgage.

105.   Which means under the law and under the mortgage, there could be no scheduling of a foreclosure sale, as acceleration is a condition precedent to any other step leading to foreclosure.

106.   No advertising of a foreclosure sale was allowed but Defendant Home Point did it anyway.

107.   Three times.

## Violations Of The FDCPA

108.   Defendant Home Point has communicated with the represented Plaintiffs in violation of 15 USC Section 1692c(a)(2) which forbids this.

109.   There is no question that Defendant Home Point knows the undersigned represent the Plaintiffs as evidenced by the pleadings filed in this Honorable Court and in state court.

110.   Foreclosure counsel, Rubin Lublin who at all times has acted in the line and scope of its agency relationship with its principal Defendant Home Point, also did this.

111.   The actions of debt collector Rubin Lublin are the actions of the debt collector Defendant Home Point.

112.   In 2019 Plaintiffs counsel notified Defendant Home Point counsel (previous counsel that represented Stonegate[8] in the prior litigation) that there were questions about why there was not a modification of the loan when the TPP had been completed.

113.   Less than a month later, Defendant Home Point (through Rubin Lublin) wrote to Plaintiffs directly on April 15, 2019, when Defendant Home Point knew Plaintiffs were represented by counsel.

114.   Defendant Home Point has violated 15 USC Section 1692d which forbids harassing conduct.

115.   Defendant Home Point has threatened foreclosure when Plaintiffs were paying the trial payments of the TPP and thus Defendant Home Point had no right or ability to seek to foreclose.

116.   The natural consequence of this is to cause the Plaintiffs to feel harassed and oppressed as they have made the required payments but yet Defendant Home Point has publicly stated (much to the embarrassment and humiliation of Plaintiffs) that they are behind and will be foreclosed.

---

[8] Stonegate is the entity that Defendant Home Point claims is a part of it now.  And has been since May 31, 2017, so it claims these entities are one in the same.

117. Defendant Home Point has also violated the example given in 15 USC Section 1692d(3) by publishing in a newspaper in Plaintiff's home county that they are not paying their debt.  What Defendant Home Point did is equivalent to maintaining a list of those who do not pay – but it is hard to imagine a more public setting than a newspaper in the Plaintiffs' county.

118. There was no legal right to do so and this has caused tremendous mental anguish and emotional distress to Plaintiffs.

119. Defendant Home Point has violated 15 USC Section 1692e, which forbids any deceptive conduct in collecting the debt.

120. Defendant Home Point has done this in a number of ways including but not limited to:

   a.  Threatening to foreclose with no legal right to foreclose.

   b.  Publicly advertising a foreclosure when there was no legal right to foreclose.

   c.  Threatening to declare Plaintiffs in default when they were paying the TPP payments and there was no right to declare them in default.

   d.  Threatening to accelerate the loan when there was no right to do so and no intent to do so.

   e.  Threatening to impose charges and fees without the legal right to do so.

f.  Telling Plaintiffs they could assert defenses in a "foreclosure proceeding" when Defendant Home Point knew this was impossible as the foreclosure it intended to do[9] was non –judicial so there is no proceeding to assert defenses in.

g.  Credit reporting a false balance, not reflecting the payments made and that the loan should have been modified as Plaintiffs completed the TPP, as well as falsely reporting the status of the loan including that foreclosure proceedings have occurred.  Defendant Home Point knew this or should have known these are false.

h.  Credit reporting without noting that the account is disputed when Defendant Home Point knows (or should have known) the account is disputed.

i.  Promising that if Plaintiffs did the TPP payments Defendant Home Point would modify their loan when Defendant Home Point refused to do so.

j.  Claiming to not know Plaintiffs were represented by counsel when in fact Defendant Home Point knew Plaintiffs were represented by

---

[9] And would have done but for the filing of the original complaint in this case.  That is the only thing that stopped the foreclosure as the Plaintiffs' dispute and verification request (see below) was brushed aside in the rush to foreclose.

counsel when the April 15, 2019, collection letter was sent by Rubin Lublin.

k.  Claiming or suggesting that the April 15, 2019 letter and the June 7, 2019 letter were not subject to the FDCPA when they clearly are.

l.  Falsely representing the rights and obligations of Defendant Home Point when responding to a proper request for verification under 15 USC Section 1692g.

m. Falsely representing a payment history that leaves out numerous payments by Plaintiff in response to a proper request for verification under 15 USC Section 1692g

n.  The mortgage statements represent the wrong amount, and reflect property inspections and other fees that are illegal and did not or should not have been charged to Plaintiffs.

121.  The subsections of 15 USC Section 1692e are merely examples of violations of 15 USC Section 1692e but since some debt collectors view them as separate causes of action, Plaintiffs will break them down here to prevent a time wasting motion to dismiss.

122.  15 USC Section 1692e(2) has been violated as the character and legal status of the loan have been misrepresented as shown above.  The same is

true with the amount, which has not been accurately represented to Plaintiffs and the credit reporting agencies.

123. 15 USC Section 1692e(4) forbids falsely threatening to take property. Here (as described above also) Defendant Home Point has done this repeatedly when it knows it has no right to foreclose but has represented that it has such ability.

124. 15 USC Section 1692e(5) has been repeatedly violated as Defendant Home Point has threatened to take action that it knows it cannot legally take and/or that it has no intention of taking.  One obvious example (among the many listed above) is the threat to foreclose when there is no legal right to do so.

125. 15 USC Section 1692e(8) has been violated by failing to credit report the account is disputed and by credit reporting false information about the amount, status of the account, and history of the account.

126. 15 USC Section 1692e(10), which like the main section of 15 USC Section 1692e, simply forbids any false or deceptive means to collect a debt.  The examples listed above are full of such misconduct by Defendant Home Point.

127. 15 USC Section 1692e(11) requires a debt collector to notify the consumer that each communication is an attempt to collect a debt by a

debt collector but Defendant Home Point in its April 15, 2019 letter by Rubin Lublin falsely stated this disclaimer "Should the FDCPA apply" when the FDCPA requires debt collectors to clearly state the warning[10], not put hedging language and force the burden of research and evaluation of whether a debt collector is actually a debt collector upon the consumer's shoulders.  The repeated references to the FDCPA perhaps not applying violate this law.  The same is true of the June 7, 2019 letter.

128.   15 USC Section 1692f forbids Defendant Home Point and its agents from engaging in any unfair or unconscionable conduct.  Here are examples of some of the unfair conduct by Defendant Home Point:

a.  Declaring Plaintiffs in default when there was no right to do so as Plaintiffs had paid the TPP.

b.  Threatening to accelerate the loan when Defendant Home Point knew there was no legal basis to do so and had no intention of doing so.

c.  Threatening to foreclose and to advertise publicly the foreclosure when there was no basis to do so.

d.  Then actually publicly advertising the foreclosure.

e.  Refusing to give a modification when Plaintiffs finished the TPP.

---

[10] This is what is often called the "Mini-Miranda" warning due to its similarity to the Miranda warning law enforcement gives.

f. Imposing charges and fees when such are not allowed – as one example without an acceleration there can be no foreclosure and thus no foreclosure expenses and no foreclosure attorney fees but Defendant Home Point has imposed those on Plaintiffs in violation of the law and the contract between the Parties.

129. As noted above with 15 USC Section 1692e, the subsections of 15 USC Section 1692f are merely illustrations, not separate causes of action but in an abundance of caution, Plaintiffs will go through several sections.

130. 15 USC Section 1692f(1) forbids Defendant Home Point from collecting any amount that is not expressly authorized by the mortgage or note.

131. This has been violated as shown above with imposing various fees including foreclosure related fees when there was no foreclosure allowed under the mortgage without an acceleration.  And no such acceleration would have been allowed anyway as Plaintiffs were in loss mitigation paying their TPP.

132. 15 USC Section 1692f(6) forbids Defendant Home Point from taking or threatening to take the property of Plaintiffs in foreclosure when there was no right to possession as, among other factors, no acceleration has occurred and thus no foreclosure could occur.

133.   15 USC Section 1692g has been violated by Defendant Home Point by and through the actions of its debt collection foreclosure counsel Rubin Lublin for which Defendant Home Point is absolutely liable[11] for all such violations of the FDCPA.

134.   Defendant Home Point sent a letter to Plaintiffs on April 15, 2019, which suggested that the FDCPA might not be applicable to the letter.

135.   Such a representation is false as the FDCPA does apply to letters seeking to foreclose on property when there is no present right to foreclose and also applies when money is being demanded as this letter demanded.

136.   The letter goes on to give the required disclosure under 15 USC Section 1692g(a).  This is known as a validation notice and gives the consumer enhanced rights if a dispute is sent within 30 days of receipt of the validation notice.

137.   But the warnings are overshadowed or contradicted by the letter from Defendant Home Point (by and through its agent Rubin Lublin) which violates 15 USC Section 1692g(b) as follows:

---

[11] A debt collector such as Defendant Home Point cannot escape liability for FDCPA violations by "outsourcing" its collection activities to others, whether or not the outsource place is a debt collector.  Here, the foreclosure collection lawfirm of Rubin Lublin is a debt collector.

a. Suggesting repeatedly (at least in four places) that the FDCPA does not or may not apply which would mean the 15 USC Section 1692g(a) rights are not in place for Plaintiffs

b. The notice also suggests that collection activity can occur before the expiration of the 30-day period that Plaintiffs had the right to dispute but it fails to say that if a dispute is made, then those collection activities must cease until the debt has been This would cause the least sophisticated consumer to believe or question whether the rights set forth under 15 USC Section 1692g(a) are actually available or whether it is even worthwhile to take advantage of such rights.

138. Defendant Home Point also violated 15 USC Section 1692g in its inadequate verification in response to Plaintiffs' properly timed and described dispute letter requesting verification.

139. Defendant Home Point gave Plaintiff the right to dispute and ask for verification in its (defective) April 15, 2019 letter.

140. Plaintiffs exercised their rights under 15 USC Section 1692g on April 25, 2019.

141. This letter disputed the debt and requested verification in general and specifically on the default, the amount owed and the breakdown thereof, and if the foreclosure sale was not going to be cancelled (as requested in

the letter), then the complete file including the note, mortgage, complete accounting of the loan, paid invoices, etc.

142. While this request for verification was outstanding, the law allowed no collection activity by Defendant Home Point.

143. But Defendant Home Point ignored the clear law and continued to conduct collection activity.

144. For example, on May 16, 2019, the foreclosure was advertised even though the request for verification had been received by Defendant Home Point back in April 2019.

145. As threatened by Defendant Home Point it its validation letter, it did indeed take collection steps before the expiration[12] of the 30-day time period. Even though Plaintiffs disputed and requested verification on April 25, 2019, which Defendant Home Point received the next day.

146. The same is true on May 23, 2019 – collection activity without verification.

147. And May 30, 2019.

148. Defendant Home Point "responded" on June 7, 2019.

149. But this response is woefully inadequate and deceptive.

---

[12] The validation letter was dated April 15, 2019. Since it was not hand delivered, Defendant Home Point knew it could not be received before April 16, 2019. And that only if sent overnight to Springville, Alabama. So the earliest it could have been received was April 16, 2019. Thirty days from April 16, 2019 is May 16, 2019. So the advertisement publicly declaring Plaintiffs in default and facing foreclosure was purposely scheduled before the 30-day period had expired.

150.   First, the letter states that foreclosure proceedings have begun.  This is not true as "foreclosure" has a special meaning under Alabama law and only begins when the foreclosure sale happens and is closed when the foreclosure deed is delivered to the winning bidder.  There is no such thing as "foreclosure proceedings" except for the sale and delivery of the deed.

151.   Second, the letter incorrectly states that all a debt collector has to do to comply with 15 USC Section 1692g is "confirm in writing to you that the amount being demanded[13] is what the creditor claims is owed."

152.   The extent a debt collector such as Defendant Home Point (or its foreclosure debt collection counsel) must verify a debt is based upon the dispute.  Here the dispute clearly indicated the foreclosure sale should not proceed and this letter required much more verification than was provided.

153.   The letter goes on to say that, "Accordingly, enclosed please find a copy a [sic] current loan payment or loan history which completes the verification process in connection with your loan."

154.   This is inaccurate.

---

[13] This undercuts the incorrect statement made in the April 15, 2019, letter that no payment was being demanded.  That letter itself listed the amount allegedly owed and this follow up letter makes it clear that money was being demanded of Plaintiffs in the April 15, 2019 letter.  Any contradiction in the April 15, 2019, letter is responsibility of Defendant Home Point and shows the overshadowing and confusion in its letters.

155.   And the loan history[14] leaves out all of 2018.

156.   2019 is listed (15 pages) and 2017 and earlier is listed (22 pages) but there is no 2018 loan history.

157.   This is a critical omission as 2018 is when Plaintiffs entered into and made all of the TPP payments.

158.   Verification leaving out the critical documents is no verification and violates 15 USC Section 1692g.

159.   The letter refuses to provide any other documents requested by Plaintiffs, which violates 15 USC Section 1692g.

160.   Next, the letter on several occasions calls into doubt whether the FDCPA applies which is not allowable under the law.

161.   And the letter goes on to say that "Should it [FDCPA] apply, please be advised that this firm **may** be acting as a debt collector attempting to collect a debt and any information may be used for that purpose." [Emphasis added].

162.   The FDCPA does not allow evasive statements like this designed to create a belief in a least sophisticated consumer that the FDCPA may not apply or that a debt collector "may" not be acting as a debt collector.

---

[14] The alleged loan history is incomplete and confusing and would not be expected to be understood by a consumer.  This is not a valid verification.

163. So the alleged response by Defendant Home Point mailed on June 7, a mere six days before the scheduled foreclosure (June 13, 2019), does not satisfy the requirements of 15 USC Section 1692g.

164. Because Defendant Home Point would not agree to suspend collection activities until it properly verified the debt, this lawsuit had to be filed to prevent Defendant Home Point from further harming Plaintiffs by a second illegal foreclosure.

165. The violations of the FDCPA have caused past and future mental anguish to Plaintiffs as Defendant Home Point expected – when refusing payments, making false statements and threats, refusing to stop a foreclosure without a lawsuit and all the other violations of the FDCPA will naturally cause massive harm to Plaintiffs, including damage to reputation, credit, monetary loss and emotional distress.

166. We understand our home is our "castle" so when someone is illegally threatening to take our home and has lied and acted unfairly and in an abusive manner related to a home loan, the only possible result is massive mental anguish which has manifested itself in mental distress and physical symptoms including but not limited to loss of sleep, worry, stomach problems, anxiousness, and elevated heart rate and blood pressure.

**RESPA Applies To The Loan And To Defendant Home Point**

167.   The loan at issue qualifies under RESPA including 12 C.F.R. §1024.5(a) and 12 C.F.R. §1024.2 and it is a residential loan that was used to purchase the home of the Plaintiffs to live in and qualifies as a covered loan under RESPA.

168.   A company such as Defendant Home Point Financial Corp. can claim to be an owner or holder of the note and/or mortgage and still be a servicer under RESPA.

169.   Defendant Home Point is a servicer under RESPA as it does the following activities:

    a.   It engages in collecting payments,

    b.   Sending out monthly statements,

    c.   Handling escrow issues,

    d.   Handling loss mitigation issues,

    e.   Handling default issues,

    f.   Makes decisions to engage in foreclosures

    g.   And conducts other business that servicers commonly engage in.

**Defendant Home Point Illegally Dual Tracked And**

**Refused To Complete The Loss Mitigation Review Of Plaintiffs**

170. As noted above, Plaintiffs requested loss mitigation and received a TPP (Trial Payment Plan).

171. Plaintiffs are still in this loss mitigation plan and are being reviewed (or should be reviewed) for permanent loss mitigation.

172. As a result, it was illegal to threaten and schedule a foreclosure as this runs afoul of "dual tracking" that is prohibited under RESPA.

173. This is not an oversight or a mistake on the part of Defendant Home Point but instead is a deliberate and calculated plan in an effort to thwart the protections offered to consumers such as Plaintiffs when dealing with a mortgage loan.

174. Defendant Home Point Financial Corp. has a pattern and practice of violating RESPA as shown by its repeated violations of dual tracking and refusal to fairly consider Plaintiffs for loss mitigation.

175. The violations of RESPA have caused past and future mental anguish to Plaintiffs as Defendant Home Point expected when it decided to dual track to foreclosure and refuse to fairly give Plaintiffs a decision on their loss mitigation after they had completed the TPP.  These types of violations

naturally cause massive harm to Plaintiffs, including damage to reputation, credit, monetary loss and emotional distress.

176.   We understand our home is our "castle" so when someone is illegally threatening to take our home and has lied and acted unfairly and in an abusive manner related to a home loan, the only possible result is massive mental anguish which has manifested itself in mental distress and physical symptoms including but not limited to loss of sleep, worry, stomach problems, anxiousness, and elevated heart rate and blood pressure.

**Agency, Damages, and No Apology**

177.   As a direct result of the acts complained of against Defendant Home Point Financial Corp., Plaintiffs have been caused to suffer, and will continue to suffer great mental anguish, damage to Plaintiffs' reputation, economic and emotional damages and claim from Defendant Home Point Financial Corp. all damages allowable under the law.

178.   It is understandable and natural and foreseeable that if an improper and illegal threat is made to take a consumer's home, the consumer will find this very upsetting and will suffer emotional distress – and such is the case with the Plaintiffs.

179. Plaintiffs' names have been published in a newspaper and online as facing foreclosure – this has caused great emotional distress as would be expected when false information is published about a consumer in the public.

180. Knowing that Defendant Home Point Financial Corp. has violated the federal and state laws is very upsetting and has caused emotional distress and mental anguish to Plaintiffs.

181. Plaintiffs do not know what other illegal acts Defendant Home Point Financial Corp. will commit but it is obvious to Plaintiffs that Defendant Home Point Financial Corp. will continue to illegally collect the debt and attempt to take Plaintiffs' home and this has caused and will continue to cause great emotional distress, damage to reputation, and mental anguish as well as the economic loss and damage to credit.

182. All employees and agents of Defendant Home Point Financial Corp. acted with the line and scope of their employment and/or agency relationship and this includes the foreclosure debt collector lawfirm of Rubin Lublin.

183. Defendant Home Point Financial Corp. has refused to apologize to Plaintiffs for its misconduct against Plaintiffs.

184. As a direct result of the acts complained of against Defendant Home Point, Plaintiffs have been caused to suffer, and will continue to suffer great mental anguish, damage to Plaintiffs' reputation and credit, economic and emotional

damages and claim from Defendant Home Point all damages allowable under the law.

## COUNT I

## VIOLATIONS OF RESPA

185. If requested, servicers such as Defendant Home Point must consider Plaintiffs for loss mitigation options before foreclosing.

186. Plaintiffs discussed this with Defendant Home Point and filled out the paperwork Defendant Home Point said was necessary and Plaintiffs were approved for the TPP (Trial Payment Plan) where three payments would be made in October, November, and December 2018.

187. Plaintiffs made these payments.

188. After no permanent modification was offered, Plaintiffs continued to uphold their end of the bargain by paying the TPP each month through March of 2019.

189. No modification by Defendant Home Point was offered nor were Plaintiffs told they had been rejected for loss mitigation.

190. Then Defendant Home Point refused to accept payments and began taking steps to foreclose.

191.   Each such step was illegal as when a consumer is under loss mitigation review, no foreclosure steps can occur, especially not to go so far as to advertise in a public newspaper and only stop the foreclosure when sued.

192.   The steps include at least the following items:  sending the default letter in February 2019; the letter of April 15, 2019, threatening foreclosure; the May 16, 2019, foreclosure ad; the May 23, 2019, foreclosure ad; the May 30, 2019, foreclosure ad; and the letter of June 7, 2019, letter which implies the foreclosure will move forward on June 13, 2019.

193.   As a result of this lack of compliance by Defendant Home Point, it is liable to Plaintiffs for actual damages, statutory damages for each violation, costs and attorneys fees.

194.   The violations are also described in paragraphs 4, 5-9, 13, 35-38, 94-107, 167-176, and 177-184 of this Amended Complaint.

195.   The violations of the law by Defendant Home Point have resulted in mental anguish, emotional distress, financial loss, damage to credit, and other damages that will be identified in discovery.

## COUNT II

## VIOLATIONS OF THE FDCPA[15]

196. The acts and omissions of Defendant Home Point violate the FDCPA.

197. The following subsections are included in this: 15 U.S.C. §§ 1692c, 1692c(a)(2), 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), 1692g, and 1692g(b).

198. These violations are described in paragraphs 4, 5-9, 13-15, 16-25, 26-34, 35-38, 39-42, 43-45, 46-93, 94-107, 108-166, and 177-184.

199. As a result of the violations of the FDCPA, Plaintiffs are entitled to statutory damages, actual and compensatory damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k from Defendant Home Point.

## COUNT III

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT EMPLOYEES/AGENTS

200. Defendant Home Point has routinely, systematically and repeatedly violated the law as set forth in this Amended Complaint.

---

[15] There is simply one cause of action for violating the FDCPA – the individual sections and subsections are ways that the FDCPA is violated. In the same manner as a negligent driver might violate any number of rules of the road and have multiple acts of negligence, in a car wreck lawsuit there is simply one cause of action entitled "Negligence". If Defendant Home Point truly feels it cannot respond without each section and subsection being broken into individual causes of action, it can reach out to the undersigned and we can discuss this so as to not waste time and judicial resources.

201. Defendant Home Point's employees/agents are allowed and encouraged to break Alabama tort law in order to collect debts and foreclose on homes.

202. The Alabama tort law violated includes:  negligence, wantonness, invasion of privacy, and fraud.

203. For example, Defendant Home Point know it must follow the mortgage but it allows and encourages their collectors/employees/agents to violate the mortgage as set forth in this Amended Complaint by refusing payments and scheduling a foreclosure without an acceleration letter.

204. Defendant Home Point knows that it is illegal to foreclose but has publicly and privately told Plaintiffs that it will take Plaintiffs' home from Plaintiffs and this constitutes an invasion of privacy under Alabama law as well as negligence and wantonness.

205. Defendant Home Point is aware of the wrongful conduct of its agents and/or employees.

206. The actions of Defendant Home Point's agents and employees were not done secretly but instead were done openly through letters, calls, credit reporting and even publicly through advertising the foreclosure in a public newspaper and online.

207. Clearly Defendant Home Point knew or should have known of the violations of Alabama tort law if Defendant Home Point had exercised any due care.

208.  As Defendant Home Point has not apologized in any way to Plaintiffs, it is apparent that Defendant Home Point intended for Plaintiffs to be treated the way Plaintiffs were treated by Defendant Home Point's employees and agents.

209.  Despite the knowledge of what was happening, Defendant Home Point refused to correct, discipline, supervise or make right the wrongful conduct of their agents and employees who violated Alabama tort law.

210.  Instead, Defendant Home Point has intentionally (or wantonly or negligently) reaped the rewards of and encouraged its employees and agents to violate Alabama tort law.

211.  Defendant Home Point negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent employees or agents, who were allowed or encouraged to violate Alabama law as was done to Plaintiffs and Defendant Home Point is thereby responsible to the Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs as described in paragraphs 177-184.

**COUNT IV**

**NEGLIGENT AND/OR WANTON CONDUCT**

212.  Defendant Home Point had a duty, and assumed a duty, to treat Plaintiffs fairly and with reasonable care when they decided to threaten to foreclose and advertise publicly an upcoming foreclosure against Plaintiffs.

213. The same is true when Defendant Home Point agreed to consider Plaintiffs for loss mitigation – it had to treat them with reasonable care in this duty that it voluntarily assumed in considering Plaintiffs for loss mitigation.

214. There is no contract between Plaintiffs and Defendant Home Point and there is no contractual relationship between Plaintiffs and Defendant Home Point.[16]

215. So when Defendant Home Point decided to collect money and to threaten and actually schedule a foreclosure, with no contact and not contractual right to do so, it was obligated to proceed with reasonable and due care.

216. Defendant Home Point had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiffs when it began to collect against Plaintiffs and threaten foreclosure.

217. Defendant Home Point violated all of the duties it had and such violations were made negligently and wantonly.

218. This is especially true as there is not even a contract between Defendant Home Point and Plaintiff.

219. It was foreseeable, and Defendant Home Point did in fact foresee it, the actions of Defendant Home Point would lead and did lead to the exact type of harm suffered by Plaintiffs.

---

[16] This is pled in the alternative if it turns out that Defendant Home Point does NOT own the loan (the debt) which is different than owning the mortgage. The mortgage is the security – the loan/note is the debt. It is unclear without discovery whether Defendant Home Point owns the debt or not or is only servicing it. If it does not own the debt, then there is no contractual relationship between the parties.

220. Plaintiffs have been damaged by Defendant Home Point's wrongful conduct as described in this Amended Complaint.

221. This count is based on the paragraphs included in this count and paragraphs 5-12, 13-25, 35-38, 94-107, 170-176, and 177-184.

## COUNT V

## INVASION OF PRIVACY

222. Alabama law recognizes Plaintiffs' right to be free from invasions of privacy and Defendant Home Point violated Alabama state law as described in this Complaint.

223. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

**Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

224. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

225. Defendant Home Point and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

226. Defendant Home Point and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt including threatening to take Plaintiffs' property, actually advertising in newspapers that Plaintiffs defaulted and would lose their home to a foreclosure, taking Plaintiffs' money in the TPP with no intention of giving Plaintiffs a modification, and all other wrongful acts which will come to light in discovery, thereby invading and intruding upon Plaintiffs' right to privacy.

227. This includes any false credit reporting by Defendant Home Point on Plaintiffs' credit reports (which was made with malice, wantonness, and/or recklessness), the threats to foreclose, the illegal debt collection, and all

other wrongful acts of Defendant Home Point as outlined in this Amended Complaint and as will be proven at trial.

228. The plan and scheme carried out by Defendant Home Point exceeded the bounds of reasonableness that govern the collection of debts, as there is no right to collect this debt in this manner and no right to threaten to foreclose.

229. Under no circumstance is a company such as Defendant Home Point allowed to threaten and actually advertise publicly for a foreclosure when there is no legal right to foreclose in this situation.  It is a gross violation of Plaintiffs' right to privacy.

230. Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

231. The conduct of Defendant Home Point and its agents, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by the Defendant Home Point which occurred in a way that would be highly offensive to a reasonable person in that position.

232. Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendants.

233. All invasions of privacy acts of Defendant Home Point and its agents and/or employees were committed with malice, intent, wantonness, and/or

recklessness and as such Defendant Home Point are subject to punitive damages as well as nominal and compensatory damages.

234. This count is based on the paragraphs included in this count and paragraphs 5-12, 13-25, 35-38, 94-107, 108-166, 170-176, and 177-184.

## COUNT VI

## MISREPRESENTATION AND/OR SUPPRESSION

235. Defendant Home Point Financial Corp. has made misrepresentations and/or suppressions of material fact.

236. Defendant Home Point Financial Corp. represented to Plaintiffs if they made their trial payments that their loan would be modified or they would at least be considered fairly for loss mitigation.

237. This occurred in the TPP letter that Defendant Home Point presented to Plaintiffs and that was signed on September 14, 2018.

238. Defendant Home Point lied about this and also hid the truth that the Plaintiffs would not receive a decision and instead would face a foreclosure.

239. All of these relate to material facts – modifying the loan and avoiding foreclosure.

240. It is hard to imagine what could be more material than these facts.

241. Plaintiffs have relied upon Defendant Home Point's representations and suppressions and have been harmed thereby.

242. All such misrepresentations and suppressions of material fact were made intentionally, maliciously, recklessly, and/or negligently.

243. At the time of each misrepresentation and/or suppression of material fact, Defendant Home Point had no intention of keeping its representations and knew the information it suppressed from Plaintiffs would be critical for Plaintiffs to know.

244. Had Plaintiffs known of the misrepresentations and suppressions of material fact, they would not have agreed to go forward with the TPP and face foreclosure.

245. All misrepresentations and suppressions by Defendant Home Point and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Home Point is subject to punitive damages as well as nominal and compensatory damages.

246. This count is based on the paragraphs included in this count and paragraphs 5-9, 35-38, and 177-184.

## <u>RELIEF REQUESTED</u>

**WHEREFORE,** Plaintiffs having set forth their claims for relief against Defendant Home Point, respectfully prays of the Court as follows:

a. That Plaintiffs have and recover against Defendant Home Point a sum to be determined by a jury in the form of actual/compensatory damages; nominal damages; punitive damages (due to the intentional, reckless, wanton, and malicious conduct); and statutory damages;

b. That Defendant Home Point be enjoined from further violations of the law against Plaintiffs;

c. That Plaintiffs have reasonable attorney's fees, costs, expenses; and

d. That Plaintiffs have such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

/s/John G. Watts
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiffs**

45

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS CAUSE.**

/s/John G. Watts
**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Timothy P. Pittman
Rubin Lublin, LLC
200 Clinton Avenue West, Suite 406
Huntsville, Alabama 35801

/s/ John G. Watts
OF COUNSEL