# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DVISION

JOSHUA OTWELL
and DANNA LEE OTWELL,

    Plaintiffs,

vs.

HOME POINT FINANCIAL CORP.,

    Defendant.

Case No. 4:19-cv-01120-ACA

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Undisputed Material Facts

1. The Plaintiffs, Joshua and Danna Lee Otwell (the "Otwells"), purchased the home and land located at 525 Fern Creek Drive in Springville, Alabama (the "Property) on or about January 28, 2015, with a loan of $235,554.00 from Southpoint Bank (the "Loan"). Exhibit 1 - Otwell Deed, doc. 26-1; Exhibit 2 - Otwell Note, doc. 26-2.

2. The Otwells secured Loan to the Property with a mortgage to Southpoint Bank (the "Mortgage"). Exhibit 3 - Otwell Mortgage, doc. 26-3.

3. On August 11, 2016, the Loan and the Mortgage were assigned to Stonegate Mortgage Corporation ("Stonegate"). Exhibit 4 - Assignment of Mortgage, doc. 26-4; Exhibit 5 - Allonge to Note, doc. 26-5.

4. The Otwells defaulted on their Loan by failing to make all the scheduled payments, so Stonegate foreclosed and purchased the Property at auction on or about January 17, 2017. Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶5; Exhibit 7 – Foreclosure Deed, doc. 26-7; Am. Compl. doc. 7, ¶¶16, 53-54.

5. In May 2017, Stonegate and all of its assets, including title to the Property, were acquired by the Defendant, Home Point Financial Corp. ("Home Point"). Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶6; Exhibit 8 – Stonegate Acquisition Announcement, doc. 26-8.

6. On June 30, 2017, Stonegate filed suit to eject the Otwells from the Property. Am. Compl. doc. 7 ¶17; Stonegate v. Otwell, 59-CV-2017-900070.

7. The litigation remained active for more than a year, until August 2018, when Home Point offered to resolve the dispute by giving the Otwells a three-month Trial Payment Plan in order to qualify them for an FHA Partial Claim – a repayment plan that allows defaulting borrowers to reinstate their loan by deferring the past due balance owed to the end of the loan, interest free. Am. Compl. doc. 7 ¶¶21-25; Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶8; Exhibit 9 – Trial Payment Plan, doc. 26-9.

8. The Otwells accepted the Trial Payment Plan. Home Point set aside the foreclosure, reinstated the Loan and Mortgage, and dismissed the ejectment

action.  Am. Compl. doc. 7 ¶¶21-25, 35; Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶9; Exhibit 9 – Trial Payment Plan, doc. 26-9.

9. In October, November, and December 2018, the Otwells made the payments required by the Trial Payment Plan. Am. Compl. doc. 7 ¶¶35-36; Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶9; Exhibit 9 – Trial Payment Plan, doc. 26-9.

10. On December 14, 2018, Home Point provided the Otwells a Loan Modification Package, consisting of a promissory note, subordinate mortgage, and other documents designed to secure, and defer the Otwells' past due balance to the end of their loan, interest free.  Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶9; Exhibit 10 – Loan Modification; Exhibit 13 – Home Point Process Notes, doc. 27-1; Exhibit 14 – Loan Modification Delivery Confirmation, doc. 27-2.

11. The Otwells did not sign or return any part of the Loan Modification Package to Home Point. Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶10; Exhibit 13 – Home Point Process Notes, doc. 27-1.

12. During the period preceding and during the Trial Payment Plan the Otwells' account remained severely in default. Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶10; Exhibit 11 –Account Statements, doc. 27-11, pgs. 1, 5, 8, 10, 14.

13. Because the Loan Modification was not signed and returned, and because the past-due balance was not otherwise cured, beginning in February 2019, Home Point resumed standard default noticing to the Otwells, in due course,

providing the required foreclosure notices.  Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶¶10-11; Exhibit 12 – Foreclosure Notices, doc. 26-12.

14. The Otwells filed this case in the Circuit Court of St. Clair County, Alabama on June 12, 2019, the day before the scheduled foreclosure sale. Complaint, doc. 1-1.

15. The case was removed to this Court on July 17, 2019. Notice of Removal, doc. 1.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A movant can meet this burden by showing an absence of evidence necessary to support the nonmoving party's claims, on which the nonmoving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If an absence of necessary evidence is shown, the burden shifts to the nonmoving party to go beyond the pleadings, to "come forward with specific facts," and present actual evidence sufficient to show that there is a genuine issue upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Discussion of Relevant Legal Authorities**

This case was hastily filed in the St. Clair County Circuit Court on June 12, 2019, one day ahead of Home Point's scheduled foreclosure sale. Complaint, doc. 1-1; Exhibit 12 - Foreclosure Notices, doc. 26-12, pg. 5. In its original form the case did not even reference the correct property address, and its material allegations were notably copied and pasted, verbatim, from another case filed by the same plaintiffs' counsel. Complaint, doc. 1-1, ¶6; see generally Motion to Dismiss, doc. 3, pgs. 1-2. These facts notwithstanding, the filing of this case succeeded in its one, true purpose. Home Point's foreclosure sale was cancelled and has not yet been rescheduled. This motion seeks to dispose of the specter of a lawsuit that remains.

The Otwells' complaint originally had eight separate counts. Complaint, doc. 1-1. After removal and a motion to dismiss, the averments were retooled, and the claims trimmed six. Am. Compl. doc. 7. The gravamen of the Otwells' retooled complaint is the averment that Home Point failed to offer them a permanent loan modification after their successful completion of the Trial Payment Plan. Am. Compl. doc. 7, ¶¶ 37, 112, 120(g), 120(i), 128(e), 188-189, 226, and 236-239. In counts I and II the Otwells assert that this omission is a direct violation of the Real Estate Settlement Procedures Act (RESPA) and the Fair Debt Collection Practices Act (FDCPA). In Counts II, III, V, and VI the Otwells assert that Home Point's

failure to offer them a loan modification poisoned all subsequent efforts to collect the debt. Because each of these claims is critically tied to the alleged failure by Home Point to offer a loan modification, the Otwells have the burden in each claim to prove this omission.  The Otwells cannot carry this burden.

Home Point is entitled summary judgment on all remaining claims because it has presented irrefutable evidence confirming that it did, in fact, offer the Otwells a loan modification on December 14, 2019, after what it agrees was a successful completion of the payments agreed in the Trial Payment Plan.  Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶9; Exhibit 10 – Loan Modification; Exhibit 13 – Home Point Process Notes, doc. 27-1; Exhibit 14 – Loan Modification Delivery Confirmation, doc. 27-2. It was the Otwells who failed to perform, omitting to sign and return the loan modification. The evidence completely refutes the most fundamental allegation of each of the Otwells' remaining claims, so there can exist no genuine issue of material fact.

This loan modification issue notwithstanding, the Otwells' also misunderstand and misstate many of the idiosyncratic nuances of the federal and state law claims attempted. In the interest of completely disposing the Otwells' remaining claims, consider the following:

**Count 1 - RESPA.**

As it is invoked here, the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. (RESPA), provides a civil cause of action for violations of the loss mitigation requirements set out in 12 C.F.R. §1024.41 (also known as "Regulation X"). In pertinent part, RESPA and Regulation X require that, after receipt of a "complete loss mitigation application," a lender must evaluate the borrower for all loss mitigation options available and give notice of which loss mitigation options, if any, can be offered.  12 C.F.R. §1024.41(b) and (c).

The Otwells' fundamental assertion here is that RESPA mandates that Home Point provide them a loan modification. Am. Compl., doc. 7 ¶¶188-189. This is an overt misconception of RESPA. Home Point absolutely did offer the Otwells a loan modification, but this is almost beside the point, because "[n]othing in §1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. §1024.41(a). In addition to being dead wrong about what happened, the Otwells are also wrong about what is required.

Other provisions of RESPA invoked by the Otwells here forbid Home Point from pursuing a foreclosure "if a borrower is performing" pursuant to the terms of loss mitigation plan. 12 C.F.R. §1024.41(c)(2)(iii) and (f). While it is undisputed that the Otwells made their three payments under the Trial Payment Plan, it is likewise undisputable that they still cannot prove their performance under the Trial

Payment Plan, due to the evidence conclusively demonstrating that they failed to sign and return the loan modification documents Home Point provided. See Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶9; Exhibit 10 – Loan Modification; Exhibit 13 – Home Point Process Notes, doc. 27-1; Exhibit 14 – Loan Modification Delivery Confirmation, doc. 27-2.

Damages are another "essential element" of RESPA claim. Renfroe v. Nationstar Mortg., LLC, 822 F. 3d 1241, 1246 (11th Cir. 2016). Only two types are available: (1) actual damages and (2) statutory damages "in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016)(quoting 12 U.S.C. § 2605(f)(1)). Actual damages must have a "causal link" to a RESPA violation. *Renfroe v. Nationstar Mortg.*, LLC, 822 F. 3d 1241, 1246 (11th Cir. 2016); *Baez v. Specialized Loan Servicing*, LLC, 709 F. App'x 979, 982 (11th Cir. 2017). Statutory damages are meant to punish institutionalized practices of noncompliance spanning multiple victims. See e.g. *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1364–65 (S.D. Fla. 2009), aff'd, 398 F. App'x 467 (11th Cir. 2010)(disallowing statutory damages under RESPA where "plaintiffs [ ] presented no evidence of a standard or institutionalized practice of noncompliance by [the servicer]").

The Otwells' generally aver that they have suffered actual damages [Am. Compl. Doc. 7, ¶195], but they do not describe any specific incident or impact. No actual damages have been incurred, and certainly none with a "causal connection" to any RESPA violation, because RESPA has not been violated. The Otwells' naked allegations cannot survive. RESPA compliance aside, the Otwells possess no receipts, checks, expert medical opinions, diagnoses, documents, pictures, or other substantial evidence necessary to support the conclusion that they incurred any actual damages with a causal link to any RESPA violation.

In their pleadings the Otwells use the phrase "pattern or practice," but the alleged "pattern" relates only to their account. This is not what statutory RESPA damages are intended to cover. The Otwells do not allege and cannot prove any conduct by Home Point relating to any other borrowers, so they do not possess the evidence necessary to support the award of statutory damages.

**Count 2 - FDCPA.**

The Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (FDCPA), provides a civil cause of action against "debt collectors," who engage in an expressly prohibited act or fail to perform one of the enumerated requirements. *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013). The FDCPA only affords two types of damages: (i) "actual damages," again with a

causal link to the alleged violation, and (ii) statutory damages not to exceed $1,000.00. 15 U.S.C. §1692k(a).

Assessment of the Otwells' FDCPA claim adds nothing new or different to the calculus of the case, recasting the same averment about Home Point's alleged failure to give a loan modification as a statutory infraction. Based upon this averment the Otwells claim that all of Home Point's subsequent collection efforts false and deceptive. The Otwells' cannot prove that the FDCPA has been violated, so they cannot succeed. Additionally, the Otwells again do not have any proof necessary to sustain an award of actual or statutory damages.

### Count 3 - Negligent or Wanton Supervision.

"[I]mplicit in the tort of negligent hiring, retention, training and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing or tort that caused the plaintiff's injury." *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010); see also *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 825 (Ala.1999) (affirming summary judgment on a claim of employer negligence and wantonness in supervision and training where there was no "independent proof" of an underlying tort by the employee). The Otwells only tort claims in this case are invasion of privacy and fraud, stated in Counts V and VI respectively. Because these

underlying tort claims are subject to summary judgement – as discussed herein below – the Otwells claim for Negligent or Wanton Supervision fails as a matter of law.

### Count V - Invasion of Privacy.

An invasion of privacy can consist of any one of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961). Here the Otwells assert that Home Point's actions subsequent to it alleged failure to offer a loan modification constitute an intrusion into physical solitude. Am. Compl. doc. 7 ¶225; Resp. to Mot. to Dismiss, doc. 17, pgs. 19-20. This claim is severely misguided.

A wrongful-intrusion type invasion of privacy occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Johnson v. Fuller,* 706 So. 2d 700, 702 (Ala. 1997)(quoting Restatement (Second) of Torts § 652B (1977)). In *Hope v. BSI Financial, Inc.*, 2012 WL

5379177 (N.D. Ala. Oct. 26, 2012), this Court adopted the Restatement (Second) of Torts § 652B (1977), which provides that there is no liability for ordinary debt collection measures, such as "knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt." *Id.* at 5.  This consistent with prior Alabama state court decisions recognizing the basic rights of creditors to "take reasonable action to pursue a debtor an collect a debt." *Jacksonville State Bank v. Barnwell,* 481 So. 2d 863, 865 (Ala. 1985); s*ee also Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961) (Holding that not every effort by a creditor to collect a debt rises to the level of a cause of action for the debtor. "The mere effort of a creditor... to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt."

The Restatement (Second), cited in *Hope*, notes that collection measures can amount to an invasion of privacy when they are "are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." Restatement (Second) of Torts §652B(d) (1977). The Otwells' do not aver that they were hounded by Home Point. The unique feature of this case is the attempt to elevate ordinary collection efforts into statutory violations and torts by attributing the fact that they came after the allegedly offensive failure to offer a loan modification. No efforts of uniquely offensive quantity, quality, or duration are alleged. Thus, even

accepting the Otwells' averments as true, the allegations of the Amended Complaint do not invoke persistent conduct or a "course of hounding." The routine reasonableness of Home Point's so-called "collection efforts" is obvious from their face. Most of them are already in the record. <u>Exhibit 11</u> –Account Statements, doc. 27-11; <u>Exhibit 12</u> – Foreclosure Notices, doc. 26-12. These are ordinary and permitted communications. They cannot be reasonably quantified as offensive, hounding, or an over the top invasion of privacy. A dispute between the parties as to the underlying debt does not sway the analysis, or for example, elevate debt collection activities appropriate in form and timing into an invasion of privacy. Alabama courts have provided lots of analysis as to what sorts of collection activity amounts to "hounding" or an invasion of privacy, and the offending standard is far from the routine collection activity alleged by the Otwells here. *See e.g. Jacksonville State Bank v. Barnwell*, 481 So.2d 863, 865-66 (Ala.1985) (Where the creditor telephoned the debtor's home and place of employment twenty-eight to thirty-five times and went to the debtor's place of employment to call him a "deadbeat" and a "son of a bitch" in front of his colleagues); *see also Black v. Aegis Consumer Funding Group, Inc.*, 2001 WL 228062, at *4–7 (S.D. Ala. Feb. 8, 2001) (Citing a deliberate "systematic campaign of harassment" based on approximately twenty phone calls within a period of about one month, late at night and early in the morning, at home, at work, and to Plaintiff's parents).

Equally as instructive from the other direction are cases like *Windsor v. General Motors Acceptance Corp.*, 323 So. 2d 350, 351-52 (1975) and *Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1252–53 (S.D. Ala. 2008), where even repeated, combative communications were deemed insufficient to sustain a claim for invasion of privacy. Nothing even close to offending conduct is even alleged.

As the Eleventh Circuit has explained, "a plaintiff in Alabama must show that the defendant's conduct was so outrageous that it caused the plaintiff mental suffering, shame, or humiliation (for invasion of privacy)...." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1308 (11th Cir. 2007). No reasonable view of the evidence would sustain this burden of proof.

### **Count VI – Fraud or Fraudulent Suppression.**

Under Alabama law "[t]he elements of fraud are (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001). The Otwells cannot possibly succeed in such claim, first because the alleged misrepresentation is that Home Point never provided a loan modification, and this has been proven false. Second, the Otwells' actual averment not fraud, or fraudulent suppression, but

promissory fraud. Specifically, the Otwells claim that Home Point "lied" and "hid the truth" at the time of the Trial Payment Plan, convincing the Otwells to sign while "at the time … Home Point had no intention of keeping its representation and knew the information suppressed from Plaintiffs would be critical" Am. Compl. doc. 7 ¶¶237-243. If true, this would be promissory fraud, and "to support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff." *Goodyear Tire & Rubber Co. v. Washington*, 719 So.2d 774, 776 (Ala.1998))). The burden of proof for promissory fraud requires proof of intent, and thus is much heavier than the one for simple fraud. *Intercorp v. Pennzoil*, 877 F.2d 1524, 1534 (11th Cir. 1989). As discussed above, the Otwells cannot carry their burden to prove that there was a misrepresentation or even an accident. They certainly have no evidence of fraudulent intent.

Another essential element of fraud, suppression, or promissory fraud is "reasonable reliance" or inducement. *Pinyan v. Community Bank*, 644 So. 2d 919, 923 (Ala. 1994); *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988); *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1293 -94 (Ala. 1993). The Otwells do not have - and could not possibly have – any evidence to support reasonable reliance on the Trial Payment Plan as a guarantee of foreclosure

avoidance, because that not what the Trial Payment Plan says, and that is not how Trial Payment Plans work. A Trial Payment Plan is no guarantee of any particular mitigation option, and the Trial Payment Plan at issue in this case states expressly that the Otwells "may be eligible for an FHA Partial Claim," which is a repayment plan designed to help borrower who cannot otherwise cure their default or qualify for reinstatement to defer their default balance to the end of their loan. Exhibit 6 – Home Point Affidavit, doc. 26-6 ¶8; Exhibit 10 – Trial Payment Plan, pg. 1.  These circumstances prevent any possible demonstration of reasonable reliance on the Trial Payment Plan as guarantee of outcome, so the Otwells cannot succeed in proving that the Trial Payment Plan was a fraud, suppression, or promissory fraud.

To the extent actually plead, a suppression claim requires that Home Point have some duty to make the disclosure at issue. No such duty exists here. Alabama law provides that the necessary duty can arise from a "confidential relations[hip]" between the parties, or from the "particular circumstances of the case" (Ala. Code § 6–5–102); however, Alabama law considers the lender-borrower relationship to be an arms-length relationship, and does not place a duty of disclosure on the lender. *Bank of Red Bay v. King*, 482 So.2d 274, 285 (Ala.1985).

## **Conclusion**

This case was only ever meant to impede the foreclosure sale set in June 2019, so it should come as no surprise that it cannot withstand a review on the merits. The Otwells fundamental claim that they were denied a modification of their loan after successfully completing a Trial Payment Plan has been unequivocally disproven. The Otwells were presented with the loan modification. They dropped the ball. The Otwells attempts to manipulate the circumstances resulting from their own default and their own failure to sign and return the loan modification into various statutory and state law tort infractions must fail as a matter of law.

For all these reasons, Home Point moves the Court to enter summary judgment in its favor on all the Otwells' remaining claims.

Respectfully submitted on October 14, 2020.

          _s/ Timothy P. Pittman_ _____
Timothy P. Pittman (ASB-0075-I51P)
**RUBIN LUBLIN, LLC**
200 Clinton Avenue West, Suite 406
Huntsville, AL 35801
Tel:   (678) 281-2972
Fax:  (404) 601-5095
tpittman@rlselaw.com
*Attorney for Home Point*

## **CERTIFICATE OF SERVICE**

I, Timothy P. Pittman, certify that on October 14, 2020, a true and correct copy of the foregoing was served upon all parties as follows:

| | |
|---|---|
| John G. Watts | *via CM/ECF email* |
| M. Stan Herring | |
| Watts & Herring, LLC | |
| 301 19th Street North | |
| Birmingham, AL 35203 | |
| john@wattsherring.com | |
| stan@wattsherring.com | |

                                          ***s/ Timothy P. Pittman***  
                                          Timothy P. Pittman (ASB-0075-I51P)