# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JOSHUA OTWELL, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| v. ] | **4:19-cv-01120-ACA** |
| ] | |
| **HOME POINT FINANCIAL CORP.,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Before the court is Defendant Home Point Financial Corporation's ("Home Point") motion for summary judgment. (Doc. 26).

Plaintiffs Joshua and Danna Lee Otwell allege that, after they successfully completed a trial payment plan on a defaulted mortgage loan, mortgagee Home Point began foreclosure proceedings without appropriately communicating a loan modification offer or otherwise following the proper steps for foreclosure. The only claims remaining at this point are that Home Point: (1) violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 ("Count One"); (2) violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 ("Count Two"); and (3) invaded their privacy ("Count Five"). (Doc. 7 at 34–42; *see* Docs. 21, 38).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion for summary judgment:

Count One: The court **WILL GRANT** the motion as to the request for emotional distress damages and statutory damages, but **WILL DENY** the motion as to the request for pecuniary damages.

Count Two: The court **WILL GRANT** the motion as to the request for emotional distress damages, but **WILL DENY** the motion as to the request for pecuniary and statutory damages.

Count Five: The court **WILL GRANT** summary judgment in Home Point's favor on Count Five.

**I.     BACKGROUND**

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

In 2015, the Otwells purchased a property in Springville, Alabama, funding the purchase with a $235,554 mortgage. (Docs. 26-1, 26-2, 26-3). In 2017, after they defaulted on the mortgage, the mortgagee foreclosed and purchased the property at auction. (Doc. 26-6 at 2 ¶ 5; Doc. 26-7; Doc. 32-1 at 3 ¶¶ 4–5). Soon after, Home Point acquired the mortgagee. (Doc. 26-6 at 2 ¶ 6; Doc. 26-8). The predecessor mortgagee then filed an ejectment action against the Otwells in state court, which Home Point eventually took over litigating. (Doc. 28 at 2 ¶ 6; Doc. 34 at 3).

In September 2018, in an effort to end the state court litigation, Home Point offered the Otwells a three-month trial payment plan, under which their loan could be reinstated if they made three timely mortgage payments. (Doc. 26-6 at 3 ¶ 8; Doc. 26-10; Doc. 32-1 at 3 ¶ 7). The letter offering the trial payment plan stated that the Otwells might be eligible for "a FHA Partial Claim," although it did not explain what that meant. (Doc. 26-9). The Otwells accepted the trial payment plan and Home Point set aside the foreclosure, dismissed the ejectment action, and reinstated the loan and mortgage. (Doc. 26-6 at 3 ¶ 9; Doc. 26-10; Doc. 27-1; *see also* Doc. 32-2 at). The Otwells satisfied the trial payment plan in full in December 2018. (Doc. 32-1 at 3 ¶ 8).

That month, Home Point sent the Otwells what it characterizes as a loan modification package. (Doc. 26-6 at 3 ¶ 9; Doc. 27-1). The package does not contain a cover letter or provide any explanation of what it is. (*See* Doc. 26-10). The first page is a "Borrower and Notary Checklist" with instructions about how the borrowers should fill out the forms behind it. (*Id.* at 1). Next is a promissory note under which the Secretary of Housing and Urban Development ("HUD") would loan the Otwells $60,891.81, secured by a mortgage on their property. (*Id.* at 2–3). Third is a "partial claim mortgage" identifying HUD as the lender and the Otwells as the mortgagors. (*Id.* at 4–7). The package also contains a few other notices and proposed agreements that are not relevant to this case. (*See id.* at 8–12). Home

Point's internal process notes state that Home Point had "opened SPOC task to advise [borrower] to sign and return [modification documents] immediately. Also advise that [borrower] is to continue making trial [payments] in the trial amount until the [modification] is finalized. Docs must be signed in black ink and notarized. Due back by 12/29/2018." (Doc. 27-1). Nothing in the package actually mailed to the Otwells notified them of a due date. (*See* Doc. 26-10).

The Otwells dispute the characterization of this package as a loan modification offer. (*See* Doc. 34 at 3–4). The Otwells attest that they received the package but found it "strange" and "confusing" because it showed them taking out a new loan with HUD as the lender and gave no information about monthly payments or what would happen to the Home Point loan. (Doc. 32-1 at 3–4 ¶¶ 10–15; Doc. 32-10 at 3–4 ¶¶ 10–15).

In January 2019, the Otwells' attorney emailed the attorney who had been representing Home Point in the ejectment action, indicating confusion about the receipt of the new note and mortgage and asking for an explanation. (Doc. 32-2 at 4). After several days with no response, the Otwells' counsel again emailed Home Point's counsel asking for an explanation. (*Id.*). The Otwells also made another trial payment that month. (Doc. 33-1 at 11).

On February 19, 2019, Home Point sent the Otwells a letter telling them that they did not qualify for a loan modification because they had not returned the final

modification documents by "the given due date," and that they needed to pay the full mortgage payment and late charges of $56,153.79. (Doc. 32-3 at 2–3). On February 21, 2019, Home Point sent the Owells a letter stating that their loan was in default and that Home Point might accelerate the entire amount owed if they did not pay the past due amount of $57,290.31 plus various fees and expenses. (Doc. 26-12 at 1).

In March 2019, Home Point's counsel answered the January emails and told the Otwells' attorney to contact Home Point directly about "the modification." (Doc. 32-2 at 2). In March and April 2019, the Otwells made trial payments again. (Doc. 33-1 at 11). In April, although Home Point never notified the Otwells that their loan had been accelerated (doc. 32-1 at 5 ¶ 22), a law firm sent the Otwells a letter informing them that Home Point had retained it to do the nonjudicial foreclosure of the Otwells' property and that the foreclosure sale was scheduled for June 13, 2019 (doc. 26-12 at 1, 3). The letter also stated that the law firm did not believe the Otwells were represented by an attorney, but to notify the firm if they were. (*Id.* at 2).

The Otwells wrote back to the law firm, asking for information about the debt and the default and requesting that the foreclosure be canceled. (Doc. 32-6). The letter did not indicate that the Otwells were represented by counsel. (*Id.*). On June 7, the law firm responded with a loan history that omitted February 2018 through the end of December 2018. (Docs. 32-7, 32-8).

The Otwells filed this counseled lawsuit in July 2019. (Doc. 1). On at least one occasion afterward, Home Point communicated directly with the Otwells by letter seeking payment on the defaulted loan. (Doc. 32-1 at 7 ¶ 30; Doc. 33-1).

The Otwells both attest that Home Point's actions have caused them mental anguish and emotional distress, including anger, anxiety, confusion, worry, embarrassment, hopelessness, relationship stress leading them to consider separation, weight gain, sleep loss, fear of answering the door and telephone, fear of checking the mailbox, and high blood pressure caused by the stress and anxiety. (Doc. 32-1 at 8–9 ¶¶ 35–43; Doc. 32-10 at 7–12 ¶¶ 33–45).

## II.   DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

### 1.  Count One (RESPA)

In Count One, the Otwells allege that Home Point violated RESPA by failing to notify them of the result of their loss mitigation application and by beginning the

foreclosure process while Plaintiffs were still under loss mitigation review. (Doc. 7 at 34–35 ¶¶ 185–92).

"RESPA is a consumer protection statute that imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers." *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 918 (11th Cir. 2017). A mortgage servicer who fails to comply with RESPA's requirements is liable for "any actual damages to the borrower as a result of the failure" as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A)–(B).

Among other things, RESPA prohibits mortgage servicers from "fail[ing] to comply with any other obligation found . . . by regulation[ ] to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). The relevant regulation for purposes of this case is 12 C.F.R. § 1024.41 ("Regulation X"), which governs loss mitigation procedures. Loss mitigation options are "alternative[s] to foreclosure," 12 C.F.R. § 1024.31, such as modification of the mortgage, *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016).

Regulation X imposes various duties on mortgage servicers on receipt of loss mitigation applications. *See generally* 12 C.F.R. § 1024.41. It does not require "a

servicer to provide any borrower with any specific loss mitigation option." *Id.* § 1024.41(a). But it does require a servicer who has made a loss mitigation determination to "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1)(ii). If the servicer makes a loss mitigation offer, the notice must include a deadline for accepting or rejecting the offer as well as information about the borrower's appeal rights. *Id.*

Home Point moves for summary judgment on the grounds that (1) RESPA does not require it to offer a loan modification; (2) it did offer a loan modification that the Otwells rejected by not responding to the offer on time; and (3) the Otwells cannot establish actual or statutory damages. (Doc. 28 at 7–9).

Home Point is correct about its first argument—nothing in RESPA or Regulation X requires it to offer a loan modification, as the Otwells concede. (Doc. 34 at 19). The Otwells also appear to concede that the package Home Point sent them in December 2018 was a loan modification offer that they did not accept. (*Id.*). But whether the package was a loan modification offer is beside the point, because the Otwells' claim is that Home Point violated Regulation X by failing to *properly notify* them about the loan modification offer. (Doc. 7 at 34 ¶ 189). And taken in the light most favorable to the Otwells, a jury could find that the loan modification package violated Regulation X.

Regulation X sets out specific information that must be included in a notice about the servicer's loss mitigation determination, including the amount of time a borrower has to accept an offer. 12 C.F.R. § 1024.41(c)(1)(ii). The evidence here shows that Home Point simply mailed a new promissory note and partial claim mortgage to the Otwells without any explanation that this was a loan modification offer, how long the Otwells had to accept it, or their right to appeal. The only indication that the package was a loan modification offer or that there was a fifteen-day deadline to accept the offer is found in Home Point's internal process notes. (*See* Doc. 27-1). A reasonable jury could find that this loan modification offer violates Regulation X's requirements, and therefore violates RESPA.

Next, Home Point contends that summary judgment is warranted because the Otwells have not presented sufficient evidence of actual or statutory damages. (Doc. 28 at 9–10). Its entire argument with respect to actual damages is that "the Otwells possess no receipts, checks, expert medical opinions, diagnoses, documents, pictures, or other substantial evidence necessary to support the conclusion that they incurred any actual damages with a causal link to any RESPA violation." (Doc. 28 at 9). Home Point does not address the Otwells' request for pecuniary damages. (Doc. 7 at 35 ¶ 195 (seeking damages for "financial loss" and "damage to credit")). Home Point has therefore waived any argument about the Otwells' ability to

establish pecuniary damages, and the court **WILL DENY** the motion for summary judgment on Count One with respect to any pecuniary damages.

But its argument about the Otwells' ability to prove emotional distress damages fares better. There is a dearth of binding Eleventh Circuit caselaw about whether RESPA permits an award of emotional distress damages, and if it does, what evidence suffices to establish emotional distress. *See, e.g.*, *Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 902 (11th Cir. 2018) (unpublished) (stating, in a non-precedential opinion, that based on RESPA's status as a consumer protection statute and "based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, we see no reason why a plaintiff cannot recover non-pecuniary damages, such as emotional distress, under RESPA"). Home Point does not argue that emotional distress damages are unavailable under RESPA. (*See* Doc. 28 at 9). Accordingly, the court will assume that they are available, and will instead address whether the Otwells presented evidence from which a reasonable jury could award such damages.

The Eleventh Circuit has not squarely addressed the evidentiary requirement for a claim for emotional distress damages in the context of a consumer protection statute. In *Lodge v. Kondaur Capital Corporation*, however, the Court held that plaintiffs seeking emotional distress damages arising from a willful violation of the automatic stay under the Bankruptcy Code must provide evidence of "significant

10

emotional distress." 750 F.3d 1263, 1272 (11th Cir. 2014). In that case, the plaintiffs submitted their own affidavits attesting that they were stressed, experienced strife in their relationships, could not sleep without medication, and had back pain, migraine headaches, and worsening of acid reflux, all as a result of the defendant's actions. *Id.* at 1267. The Eleventh Circuit concluded that these attestations were generalized and lacking in "additional specific detail" that would "show that the [plaintiffs] suffered significant emotional distress." *Id.* at 1272. The Court also highlighted the lack of corroborating evidence. *Id.* As a result, the Court affirmed the grant of summary judgment in favor of the defendant. *Id.*

Although the *Lodge* decision related to the Bankruptcy Code instead of a consumer protection statute, the court can see no reason why the evidentiary standard applicable to an emotional distress claim should differ depending on which statute it is brought under. *Cf. Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009) (stating, in the context of a Fair Credit Reporting Act claim, that "not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims") (quotation marks omitted). The court concludes that the evidentiary standard described in *Lodge* applies equally to other claims for emotional distress.

Here, the Otwells have produced only their own affidavits describing generalized emotional distress. They attest that they have suffered anger, anxiety,

11

confusion, worry, embarrassment, hopelessness, relationship stress leading them to consider separation, weight gain, sleep loss, fear of answering the door and telephone, fear of checking the mailbox, and high blood pressure that they *believe* the stress and anxiety caused. (Doc. 32-1 at 8–9 ¶¶ 35–43; Doc. 32-10 at 7–12 ¶¶ 33–45). These statements are nearly identical to those described in *Lodge*, which the Eleventh Circuit held were insufficient to support mental distress damages absent some corroboration or evidence of egregious conduct by the defendant. *See* 750 F.3d at 1267, 1272. By contrast, the Otwells have not presented the kind of evidence that the Fourth Circuit accepted as sufficient in *Robinson*, where the plaintiff provided, in addition to her own testimony about "headaches, sleeplessness, skin acne, upset stomach, and hair loss," specific and detailed testimony from her friends, family, and co-workers about the effect the defendants' actions had on her behavior and health. 560 F.3d at 241.

The Otwells' generalized, conclusory, and speculative testimony, lacking any corroboration from doctors, friends, family, or coworkers, is insufficient to support an award for emotional distress damages. Moreover, the Otwells have not presented any evidence from which a jury could award statutory damages, which are available under RESPA only where there is "a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f)(1)(B). For these reasons, the court **WILL GRANT** the motion for summary judgment as to the requests for

emotional distress damages and statutory damages under RESPA. However, as discussed above, the court **WILL DENY** the motion as to the request for pecuniary damages.

2. Count Two (FDCPA)

In Count Two, the Otwells allege that Home Point violated the FDCPA in various ways. (*See* Doc. 7 at 36 ¶¶ 197–98). Home Point contends that because the RESPA claim fails, so should the FDCPA claim. (Doc. 28 at 10).

To the extent Home Point argues that summary judgment on the FDCPA claim is warranted because it did not violate RESPA, that argument fails, as the court has concluded that a reasonable jury could find that Home Point violated RESPA. Moreover, the FDCPA claim rests on numerous grounds that Home Point does not address in its initial brief.[1] (*See* Doc. 28 at 10; *see also* Doc. 7 at 36 ¶¶ 197–98;). Home Point does, however, argue that "the Otwells again do not have any proof necessary to sustain an award of actual or statutory damages." (Doc. 28 at 10).

The FDCPA authorizes the award of "actual damage sustained by [a] person as a result of [a debt collector's failure to comply with the FDCPA]." 15 U.S.C. § 1692k(a)(1). It also authorizes statutory damages, permitting "such additional

---

[1] Home Point has waived any argument it did not make in its initial brief about the propriety of summary judgment on the FDCPA claim. *See United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court."). In any event, the reply brief does not address many of the alleged FDCPA violations raised by the Otwells in their amended complaint and discussed in their response brief. (*See* Doc. 7 at 36; Doc. 34 at 27–29).

13

damages as the court may allow, but not exceeding $1,000." *Id.* § 1692k(a)(2)(A). In determining the amount of statutory damages, the factfinder must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

As the court explained above, the evidentiary minimum for a claim of emotional distress damages is the same no matter which statute the claim arises under. Thus, the Otwells' request for emotional distress damages under the FDCPA claim fails for the same reason their request for emotional distress damages under RESPA fails. But, as with their RESPA claim, the Otwells' request for pecuniary damages will survive because Home Point has not made any argument about pecuniary damages.

Whether summary judgment is warranted on the Otwells' FDCPA claim for statutory damages is more complicated. Home Point does not differentiate between its RESPA statutory damages argument and its FDCPA statutory damages argument. But RESPA and the FDCPA provide different standards for statutory damages. RESPA expressly limits statutory damages to cases where there is "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). The FDCPA does not contain similar language, instead authorizing "additional damages as the court may allow, but not exceeding $1,000," 15 U.S.C. § 1692k(a)(2)(A), and listing a number

14

of factors to consider before awarding statutory damages, *id.* § 1692k(b)(1). In other words, unlike RESPA, the FDCPA does not require a pattern or practice of noncompliance as a prerequisite to statutory damages. The Otwells' failure to present evidence of a pattern or practice of noncompliance therefore cannot be the basis for summary judgment on the claim for statutory damages under the FDCPA.

Accordingly, the court **WILL GRANT** the motion for summary judgment on Count Two with respect to the claim for actual damages, and **WILL DENY** the motion as to the claim for statutory damages.

### 3. Count Five (Invasion of Privacy)

In Count Five, Plaintiffs allege that Home Point invaded their privacy by unlawfully attempting to collect a debt, threatening to take their property, advertising that they had defaulted and would lose their home in a foreclosure, taking their money with no intention of granting a loan modification, and "any false credit reporting." (Doc. 7 at 41–42 ¶¶ 226–27). The Otwells maintain that because Home Point had no right to foreclose, its collection efforts were unreasonable and amounted to an invasion of privacy. (Doc. 34 at 31).

In a wrongful-intrusion invasion of privacy claim like the one the Otwells assert, the plaintiff must demonstrate that the defendant intruded into the plaintiff's "private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hogin v. Cottingham*,

533 So. 2d 525, 530 (Ala. 1988) (quotation marks omitted). Where a creditor "takes actions which exceed the bounds of reasonableness, . . . the debtor has an action [for invasion of privacy] against the creditor for injuries suffered." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865–66 (Ala. 1985). But "[t]he mere efforts of a creditor . . . to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt." *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961).

In *Woods v. SunTrust Bank*, the Alabama Supreme Court reviewed several invasion of privacy cases relating to debt collection efforts and noted that a common theme of successful claims was fraudulent conduct by the creditor (such as unilaterally adding the debtor's cars as collateral on a debt and then attempting to repossess the cars), use of "coarse, inflammatory, malicious, and threatening language," causing scenes in front of coworkers that led the debtor to be reprimanded at work, and contacting family members with lies about whether the debtor was having an affair in an effort to coerce payment of the debt. 81 So. 3d 357, 365–66 (Ala. 2011). Likewise, the Alabama Supreme Court has noted that unreasonable collection efforts would include undertaking a "systematic campaign of harassment" such as making twenty-eight to thirty-five phone calls to the debtor's home and workplace. *Jacksonville State Bank*, 481 So. 2d at 866; *see also Liberty Loan Corp.*

*of Gadsden v. Mizell*, 410 So. 2d 45, 48 (Ala. 1982) (stating that unreasonable conduct by a creditor would include "repeated conduct equating deliberate harassment, or systematic campaigns designed to vilify the debtor or expose him to public ridicule").

Home Point argues that summary judgment is warranted because it engaged in ordinary debt collection measures. (Doc. 28 at 11–14). The Otwells respond that Home Point's actions were unreasonable because it did not have the right to foreclose. (Doc. 34 at 31). This argument apparently rests on Home Point's alleged failure to comply with state law requirements about the contents of a default letter and how to accelerate a loan before beginning foreclosure proceedings. (*See* Doc. 34 at 25–26). But those allegations appear to relate to a hypothetical wrongful foreclosure claim that the Otwells did not raise in this case. They cannot shoehorn such a claim in by way of an invasion of privacy claim. Even assuming that Home Point's default letters and foreclosure procedures were flawed under Alabama law, there is no dispute that the Otwells owe the debt that Home Point was (and is) seeking to recover, nor is there any evidence that Home Point engaged in any of the unreasonable collection behaviors, such as harassment, threats, or vilification of the Otwells, that the Alabama Supreme Court has held can support an invasion of privacy claim. Accordingly, the court **WILL GRANT** the motion for summary judgment on Count Five.

III. **CONCLUSION**

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion for summary judgment:

Count One: The court **WILL GRANT** the motion as to the request for emotional distress damages and statutory damages, but **WILL DENY** the motion as to the request for pecuniary damages.

Count Two: The court **WILL GRANT** the motion as to the request for emotional distress damages, but **WILL DENY** the motion as to the request for pecuniary and statutory damages.

Count Five: The court **WILL GRANT** summary judgment in Home Point's favor on Count Five.

The court will enter a separate partial judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 9, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE