FILED
 2021 Apr-06  PM 08:38
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JOSHUA OTWELL, an individual,** | ) |
| **DANNA LEE OTWELL, an individual,** | ) |
| | ) **Civil Action No.:** |
| **Plaintiffs,** | ) |
| | ) 4:19-cv-01120-ACA |
| v. | ) |
| **HOME POINT FINANCIAL CORP., a Corporation;** | ) |
| **Defendant.** | ) |

### PLAINTIFF'S RESPONSE TO MOTION TO STRIKE [DOC. 50]

COMES NOW, the Plaintiffs, by and through counsel and hereby respond to Defendant, Home Point Financial Corp.'s Motion to Strike Plaintiffs' Affidavits.

**I.     Home Point's Motion to Strike is Due to Be Denied.**

Defendants seek to strike from the record the supplemental affidavits filed by Plaintiffs Joshua Otwell and Danna Lee Otwell [Docs 42-1 and 48-2]. Respectfully, Home Point's motion is improper as the vehicle to challenge evidence submitted in support of summary judgment was changed in the 2010 amendments to the federal rules. Fed. R. Civ. P. 56(c)(2). The middle district court noted,

1

> But Rule 56(c)(2) itself now provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Under this procedure, once an objection is made, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments. Thus, because "[t]he plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of the summary judgment procedure, rather than a separate motion to be handled preliminarily," *Campbell*, 546 F. App'x at 879, the court will construe Defendants' motions to strike as Rule 56(c)(2) objections. *See, e.g., Samuels v. City of Birmingham*, No. 2:15-cv-1374-MHH, 2017 WL 4340494, at *6 (N.D. Ala. Sept. 29, 2017) (doing same).

*Beasley v. 500 Finishes Corp.*, No. 2:17-CV-92-WKW [WO], at *8 (M.D. Ala. Aug. 13, 2018).

Courts have further noted that courts should not strike submitted materials, but address the objections "in the interest of a complete factual and legal record." *Thornton v. Mercantile Stores Co., Inc.*, 13 F. Supp. 2d 1282, 1284 n.1 (M.D. Ala. 1998). Additionally, it is up to the discretion of the trial court whether to consider supplemental evidence or arguments. *White Arnold & Dowd P.C. v. Dep't of Justice*, Case No.: 2:15-cv-00837-RDP, at *3 n.5 (N.D. Ala. June 2, 2017)(Court allowed Plaintiff's supplemental evidence after the summary judgment motions were fully briefed).

While Plaintiffs filed their Supplemental Affidavits after the court's deadline, they did so in response to what the undersigned interpreted to be a new standard imposed on Plaintiff's to support their mental anguish damages requiring a level of detail under the *Lodge* standard not previously required necessitating corroborating evidence from Plaintiffs.

These supplemental affidavits were not surprising or new evidence to Defendant as the Defendant chose not to conduct discovery. Defendant issued no interrogatories, request for documents, request for admissions and chose not to depose Plaintiffs. Defendant can hardly claim undue prejudice from Plaintiffs' supplemental affidavits more fully fleshing out and corroborating their damages in response to the application of *Lodge* to plaintiffs' claims.

**II.    Otwell's Supplemental Affidavits Are Consistent and Merely Expand on Their Prior Testimony.**

Home point seeks to have this court reject Plaintiffs' supplemental affidavits arguing that they are a "sham" are "patently inconsistent with the first affidavits" and an effort to "manufacture a genuine issue of material fact single 'with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" [Doc. 50 at p. 2].

Home Point must meet an extremely high burden to have this court reject the Otwell's subsequent affidavits on the basis that they conflict with prior testimony. Allowing subsequent affidavits, one court noted,

> Suffice it to say, the discrepancies Defendants see, if discrepancies they be, do not meet the high standard necessary for this court to disregard the affidavit testimony altogether. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) ("[W]e may *only* disregard an affidavit that contradicts, without explanation, previously given *clear* testimony. The earlier deposition testimony must consist of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." (citations and internal quotation marks omitted)).

*Beasley v. 500 Finishes Corp.*, No. 2:17-CV-92-WKW [WO], at *11 (M.D. Ala. Aug. 13, 2018).

Home Point's basis for this accusation springs from its strained effort to recharacterize Plaintiffs' affidavits and ignore common sense, arguing falsely that Plaintiffs' damages testimony in their original affidavits was based solely on the denial of a loan modification. [Doc. 50 at p. 2].[1] In fact, Plaintiffs' initial affidavits spell out the lengthy process by which the Otwells dealt with Home Point and how confusing and frustrating that was. (Doc. 32-1 ¶¶ 7- 30 and Doc.32-10 ¶¶ 7- 30).

For example paragraphs 7 through 9 of Josh Otwell's Affidavit discuss the situation by which the Otwells believed they had completed the trial payment plan

---

[1] While Plaintiffs certainly presented damages rooted in the modification denial, that was not the sole basis or focus of Plaintiffs' damages in their original affidavits.

4

but then started having their payments rejected. (Doc. 32-1 ¶7-9)  Paragraph 10 notes that the Otwells received a FedEx envelope with a "strange group of documents" and paragraph 12 notes that the documents "did not tell us how much our monthly payments would be or when the monthly payments were due but only showed a balloon payment due on or before February 1 2045." (Doc. 32-1 ¶10,12)  Paragraph 13 states how confusing the note was in paragraph 14 stating "we were confused by this as we did not know if or how the Secretary of Housing and Urban Development was related to Home Point and if this was supposed to be the modification." (Doc. 32-1 ¶14)   Paragraphs 15 through 19 further detail the confusing chain of events with Josh Otwell stating "this caused more confusion and distrust of Home Point since they could not even get the amount we were behind consistently in two letters two days apart." (Doc. 32-1 ¶15-19  Paragraph 21 states upset and frustration from the confusion of receiving door hangers because the Otwells were not told why they were not offered the modification and then Home Point refused to talk to them or their lawyers. (Doc. 32-1 ¶20-21).

    Paragraphs 23 through 29 further document the confusing communications. (Doc. 32-1 ¶23-29).[2]  It is clear and reasonable that most any individual would be

---

[2] Plaintiff Danna Lee Otwell's affidavit details the same basic facts concerning the communications and confusion and frustration resulting from this confusion.

adversely affected from a mental standpoint given the confusing communications and potential for losing their home. The fact that Plaintiffs don't state at the end of each paragraph documenting the confusing communications that this communication caused them to be upset or angry or frustrated or worried or stressed does not mean that they were not so. Plaintiffs note their confusion and at the communications and how upsetting and frustrating they were from those communications they just detailed over almost twenty paragraphs. (Doc. 32-1 ¶¶ 4-21; Doc. 32-10 ¶¶ 4-21 ).

District courts should only reject subsequent affidavit testimony that obviously contradicts clear deposition testimony in response to a clear and unambiguous question.[3] The Eleventh Circuit has described Home Point's heavy burden as follows:

> Recognizing that parties may try to escape summary judgment by using affidavits to create issues of fact where none existed, we have allowed an affidavit to be disregarded as a "sham" if it flatly contradicts earlier deposition testimony without valid explanation. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir. 1984). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* But the court must be careful to distinguish "between

---

[3] Plaintiff's subsequent affidavits incorporate the testimony of the prior affidavits. (Doc. 48-1 ¶ 2; Doc. 48-2 ¶ 2) Additionally, they are not even attempts to clean up deposition testimony as there were no depositions in this case.

> discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir. 1986).
>
> [E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition.
>
> *Id.* at 954 (quoting *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 894 (5th Cir. 1980)) (alteration in original) (citation omitted).

*Faulk v. Volunteers of America*, 444 F. App'x 316, 4 (11th Cir. 2011).

The Otwells' Supplemental Affidavits do not contradict their prior testimony but merely expand on it and more clearly set out their mental anguish in the detail required under the *Lodge*. Additionally the Otwells' affidavits corroborate the mental anguish each other suffered in greater detail, identifying specific instances and observations where they observed each other's mental anguish. Also, based on their common knowledge and experiences of what was going on at the time they related that mental anguish to the actions of Home Point.

The Otwell's supplemental affidavits provide additional detail consistent with their prior affidavits as to what was actually going on and what they experienced and should be considered by this court.

**III. The Otwells Can testify as to Their Spouse's mental Anguish and Reasonably Relate it to the Events going on at the Time.**

7

Home Point attempts to argue, without authority, that one spouse is not qualified to testify as to the other spouse's emotional distress, how that affected the other spouse and what it was that had the spouse upset, stressed, worried, embarrassed, stress eating, crying or losing sleep. Home Point asserts that this is only within the purview of a scientific expert.

Neither Otwell is attempting to testify as a scientific expert, but based on their close intimate relationship as husband and wife who have been married since 2003, have lived together continuously since then and have observed each other on a daily basis since then. (Doc. 48-1 ¶¶ 3-5; Doc. 48-2 ¶¶ 3-5).  This argument by Defendant Home Point is odd to put it gently that one spouse is incapable of knowing when the other spouse is upset, etc.

Fed.R.Evid. 701 governs such testimony to the extent it might fall under opinion testimony and states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

One court noted,

> an essential difference is that Rule 701 requires direct personal knowledge of the factual matter at issue. Only then does it allow introduction of a limited degree of opinion testimony to help convey that information and only if the court finds that it would be helpful to

> the trier of fact." *Id.* Additional distinction between lay and expert testimony was made in *United States v. Frantz,* 2004 WL 5642909 (C.D. Cal.).
>
> Lay opinion testimony most often takes the form of a summary of firsthand observations . . . it is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events. *Id.* at *12. *See also, United States v. Espino,* 317 F.3d 788, 797 (8th Cir. 2003) (Fed.R.Evid. 701 allows lay opinion based on witness's perception of events).

*Cobb v. Knode*, CIV. 09-4110, at *12 (D.S.D. Sep. 9, 2010)

The middle district examined similar testimony of mental anguish damages holding that spouses are clearly qualified to testify as to each other's mental anguish damages, stating,

> Mr. and Mrs. McLean testified about the increased stress and anxiety [*sic*] they each suffered and suffered by the other spouse after Green Tree's violative filing. Mr. McLean would have suffered some level of stress and anxiety due to his PTSD and the anniversary of his injury, but Green Tree's filing was found to have exacerbated the symptoms, resulting in more frequent nightmares and night sweats, increased anxiety and withdrawal, and increased usage of medication. The testimony of the McLeans, which the Bankruptcy Court found credible and Green Tree does not dispute, is "corroborating non-expert testimony" sufficient to clearly establish significant emotional harm.

*McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 849 (M.D. Ala. 2014).

*Mclean* went on to note "[t]he McLeans' emotional harm naturally and directly followed Green Tree's filing of a proof of claim on a discharged debt, and it is a reasonably foreseeable result in a chapter 13 bankruptcy." *McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 849 (M.D. Ala. 2014); see also *Benjamin v.*

9

*Shaw*, Civil Action No.: 4:15-cv-05110-RBH, at *16 n.9 (D.S.C. July 28, 2017)(Lay witness' belief that she did not think plaintiff will get any better was a proper lay opinion concerning his **physical** limitations, given that witness lived with plaintiff since leaving the hospital and interacted with him on a daily basis and was familiar with his physical condition before the accident and after the accident and has observed him for three-and-a-half years post-accident.) *See also Roche v. Young Bros., of Florence*, 332 S.C. 75, 86, 504 S.E.2d 311, 317 (1998) ("Generally, an ordinary observer who has had the opportunity for observation may state the health or physical condition of another, who has been injured, to enable the fact finder to draw a correct inference. 32 C.J.S. *Evidence* § 552 (1996). . . . We find that [the plaintiff]'s testimony involved her ordinary observations of her husband's physical condition following the accident.").

Home Point seeks to require Plaintiff's to provide expert medical testimony to relate Plaintiffs' stress, anxiety, bouts of crying, loss of sleep, stress eating, withdrawing from each other and their family and issues such as high blood pressure and a panic attack to Home Point's actions. Not only is this not the standard and not required under the federal rules, but Home Point seems to be creating a nearly impossible standard. What test would a doctor run to relate loss of sleep, stress eating or crying to Home Point's conduct? Doctors will frequently hedge as to complete causation for actual physical injuries from a trauma much

less provide the causation testimony demanded by Home Point. This argument by Home Point flies in the face of anyone who has ever lived with another human being and is especially odd to argue about a couple married for the last 17 years.

Based on their years of experience with each other, having been married since 2003 and daily observations of each other Plaintiffs were more than qualified to corroborate each other's mental anguish based on their observations.

## CONCLUSION

This court should Deny Home Point's Motion to Strike plaintiffs' supplemental affidavits. Furthermore, Plaintiffs' supplemental affidavits are appropriate and necessary in light of the higher standard of proof for mental anguish damages required by the application of *Lodge* to Plaintiffs' emotional distress damages under RESPA and the FDCPA. Thus, this court should consider Plaintiffs' supplemental affidavits in support of Plaintiffs' opposition to summary judgment and motion for reconsideration. Plaintiff's supplemental affidavits accurately reflect the damages suffered by Plaintiffs and those which should be considered by the jury at trial.

Respectfully Submitted,

      */s/ M. Stan Herring*
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Timothy P. Pittman
Rubin Lublin, LLC
200 Clinton Avenue West, Suite 406
Huntsville, Alabama 35801

*/s/ M. Stan Herring*
OF COUNSEL