FILED

2021 Jun-25  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JOSHUA OTWELL
and DANNA LEE OTWELL,

   Plaintiffs,

vs.

HOME POINT FINANCIAL CORP.,

   Defendant.

Case No. 4:19-cv-01120-ACA

## PRETRIAL ORDER

A pretrial scheduling conference was held in the above case on **June 24, 2021,** wherein, or as a result of which, the following proceedings were held and actions were taken:

1. <u>Appearances</u>. Appearing at the conference were:

   For Plaintiffs, Joshua and Danna Lee Otwell: John G. Watts and M. Stan Herring of the Law Firm of Watts & Herring, LLC.

   For Defendant, Home Point Financial Corp.: Timothy P. Pittman and Bret Chaness of the Law Firm of Rubin Lublin, LLC.

2. <u>Nature of the Action, Jurisdiction and Venue</u>.

   (a) The nature of this action is as follows: Claims for violations of the

   Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2605 and for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

(b) The court has subject matter jurisdiction of this action under the following statutes, rules or cases: Federal subject matter jurisdiction arises under 15 U.S.C. § 1692k(d).  Venue is proper under 28 U.S.C. § 1391(b)(2).

(c) All jurisdictional and procedural requirements prerequisite to maintaining this action **have been met**.

(d) Personal jurisdiction and/or venue **are not contested**.

3. <u>Parties and Trial Counsel</u>. Any remaining fictitious parties are hereby **STRICKEN**. The parties and designated trial counsel are correctly named as set out below:

|  | Parties | Trial Counsel: |
|---|---|---|
| Plaintiffs | Joshua Otwell | John G. Watts<br>M. Stan Herring |
|  | Danna Lee Otwell | John G. Watts<br>M. Stan Herring |
| Defendant | Home Point Financial Corp. | Timothy P. Pittman<br>Bret Chaness |

4. <u>Pleadings</u>. The following pleadings have been allowed: Complaint and Amended Complaint by Plaintiffs and Answer and Affirmative Defenses by Defendant.

5.  Statement of the Case.

**(a) Narrative Statement of the Case.**

This case concerns claims by Joshua and Danna Lee Otwell that Home Point violated the Real Estate Settlement Procedures Act ("RESPA), 12 U.S.C. § 2605 ("Count One") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* while servicing Plaintiffs' home loan.

More specifically, the Otwells sought help from Home Point and began making "trial payments" to show they were entitled to a permanent loan modification.  The Otwells allege Home Point failed to properly consider them for available loss mitigation options, failed to properly explain to the Otwells the reason they were denied a modification, failed to explain the deadlines and appeal options for accepting what Home Point considers to be a loss mitigation offer and all of this led to an attemped foreclosure by Home Point to take the home of the Otwells.

Otwells also allege that this same conduct and other actions and representations by Home Point violated the FDCPA. The Otwells claim they were damaged by the actions of Home Point.

Home Point denies the Otwells' claims.

**(b) Undisputed Facts.**

1.  On January 28, 2015, Joshua Otwell obtained a mortgage loan in the original principal amount of $235,554.00 from Southpoint Bank (the "Loan"). As

evidence of the Loan, Joshua Otwell executed a promissory note in favor of Southpoint Bank (the "Note").

2.      Danna Lee Otwell did not sign the Note and is not personally liable on the Note.

3.      To secure repayment of the Loan and Note, Joshua Otwell and Danna Lee Otwell executed a mortgage (the "Mortgage") for the property located at 525 Fern Creek Drive, Springville, Alabama 35146 (the "Property").

4.      Joshua Otwell fell behind on his mortgage payments in February 2016.

5.      On August 11, 2016, the Mortgage was assigned to Stonegate Mortgage Corporation ("Stonegate").

6.      Southpoint Bank endorsed the Note in favor of Stonegate.

7.      Stonegate held a foreclosure sale on the Otwells' property on January 17, 2017. Stonegate was the high bidder at the foreclosure sale.

8.      On May 31, 2017, Home Point acquired Stonegate.

9.      On May 31, 2017, Stonegate filed a "Foreign Corporation (Business or Non-Profit) Certificate of Withdrawal" with the Alabama Secretary of State and stated in the filing that Stonegate was "no longer transacting business in Alabama."

10.     Thereafter, the Loan, Note, and Mortgage were held by Home Point.

11.     On June 30, 2017, Stonegate filed an ejectment action against the Otwells in Alabama state court to remove them from the Property (the "Ejectment Suit").

12.     The Ejectment Suit was settled whereby it was agreed that the foreclosure sale would be rescinded and the Otwells would be offered a loan modification. Stonegate voluntarily dismissed the Ejectment Suit on September 17, 2018.

13.     With respect to the loan modification portion of the settlement, Home Point sent Joshua Otwell a letter on August 24, 2018, advising him that he "may be eligible for a FHA Partial Claim" which "is designed for borrowers, like you, who are unable to reinstate your loan or bring it current through a repayment plan." The letter offered a "Trial Period Plan" that required Joshua Otwell to timely make three trial payments in order to qualify for an FHA Partial Claim (the "Trial Period Plan").

14.     Joshua Otwell accepted the Trial Period Plan on September 14, 2018, and timely made the three required trial payments.

15.     The parties dispute the details about an alleged final loan modification offer sent by Home Point, but no final loan modification documents were executed.

16.     On February 21, 2019, Home Point sent the Otwells a notice declaring the Loan to be in default. The notice stated, in part, that a total amount of $60,225.29 was due.

17.    The default was not cured, and a foreclosure sale was scheduled for June 13, 2019.

18.    Notice of the foreclosure sale was published in the St. Clair News-Aegis.

19.    The foreclosure sale was cancelled and has not taken place.

**(c) Plaintiffs' Position on Their Claims.**

The Otwells have made claims against Home Point for its alleged conduct in connection with servicing and collection activities related to a Plaintiffs' home mortgage loan.   The applicable principles of law fall under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and set out more specifically below.

## **RESPA Violations:**

While RESPA does not require "a servicer to provide any borrower with any specific loss mitigation option" under 12 C.F.R. § 1024.41(a), it does require a servicer who has made a loss mitigation determination to "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1)(ii). If the servicer makes a loss mitigation offer, the notice must include a deadline for

accepting or rejecting the offer as well as information about the borrower's appeal rights.

Home Point violated RESPA by failing to fairly evaluate Plaintiffs' loss mitigation application and by failing to communicate the results and real reason for denial of modification.  Home Point further violated RESPA by providing a new promissory note and partial claim mortgage to the Otwells without any explanation that it was a loan modification offer, how long the Otwells had to accept it, or their right to appeal.

Damages: Plaintiffs intend to prove pecuniary and emotional distress damages.

## **FDCPA Violations:**

Plaintiff makes claims for violations of the following sections of the Act.

**15 USC § 1692c(a)(2):** "(a) Communication with the consumer … Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt-- (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

Supporting Facts: In March 2019, Home Point was notified that the Otwell consumers were represented by counsel but Home Point wrote directly to the Otwells. After the Otwells filed suit, Home Point continued to write them directly demanding payment even while Home Point's lawyers communicated with the Otwells' counsel.

**15 USC § 1692d:** "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Supporting Facts: Threatening to foreclose when there is no right to do so is harassing as well as the evasive and contradictory information sent by the debt collector Home Point.  To threaten foreclosure without a right to, and while the Otwells were paying the trial payment plans is harassing.  For Home Point to claim that it did so because of a secret, undisclosed deadline to sign a confusing alleged loan modification is further harassment.  There is no other natural consequence to treating consumers like this, especially related to a home which is the largest purchase/investment that consumers will ever make.

**15 USC § 1692d(3):** "(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title."

Supporting Facts: Home Point advertised in a public newspaper that the Otwells had refused to pay their debt (home mortgage loan) and would be foreclosed.  This is much worse than a local business keeping a list of people not to take checks from – instead this is a public advertisement to everyone in the county where the Otwells live that they are not paying their debt and will lose their home.  And, to make this even more harassing, there was no basis to put this public advertisement out there as Home Point had bungled the loan modification process and not taken the steps needed to be able to claim the Otwells were in default.

**15 USC § 1692e:** This is the general section that is illustrated by examples.  "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . ."

Supporting Facts: Home Point made numerous misrepresentations as shown below (which are incorporated) and illustrated by a few examples.

Home Point is not allowed to threaten to do something it has no intention of doing or no legal basis to do.  Otwells expect to prove that Home Point failed to send

the proper default letter and was thus not authorized under law or the mortgage to accelerate the loan.

The sequence in a foreclosure which must be strictly followed is:

- Default letter
- Then an acceleration letter
- Then the advertisement in newspaper
- And finally the actual public auction.

The Otwells will also show that no acceleration occurred of the mortgage debt. Without acceleration, there could be no threatened foreclosure as there was no legal right to foreclose. Thus, Home Point could not foreclose nor advertise a foreclosure sale. As a result, under the FDCPA Home Point could not threaten to foreclose.

Another example is not marking Otwell's credit reports as disputed as required by Section 1692e(8).

The April 15 and June 7 letters seek to minimize the warning of Section 1692e(11) by suggesting that the FDCPA does not even apply.

The other 1692e violations come from the misrepresentations in the April 15 validation letter and in the response to Otwells' request for verification (June 7, 2019).


**15 USC § 1692e(2):** "(2) The false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

Supporting Facts: Home Point's debt collection letters to the Otwells, specifically including the letter dated February 21, 2019, stated multiple amounts to cure as compared to the February 19, 2019 letter, and also identified two different dates for the oldest payment owed.

**15 USC § 1692e(4):** "(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless

such action is lawful and the debt collector or creditor intends to take such action."

Supporting Facts: Home Point is not allowed to threaten to do something it has no intention of doing or no legal basis to do. The Otwells expect to prove that Home Point failed to send the proper default letters and was thus not authorized under law or the mortgage to accelerate the loan. Thus, Home Point could not foreclose nor advertise a foreclosure sale. Under clear precedential Alabama law, Home Point could not threaten to foreclose. Home Point's threats to foreclose constituted a threat of something it had no intention of doing or no legal basis to do so. Home Point may testify that it intended to foreclose even though it knew it was illegal. Or it may testify that it was simply lying to the Otwells about foreclosing.

Either way, it is a violation of Section 1692e(4) and/or Section 1692e(5).

**15 USC § 1692e(5):** "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken."

Supporting Facts: See above on Section 1692e(4) as these sections work together in this case.

**15 USC § 1692e(8):** "(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

Supporting Facts: Plaintiffs intend to show that they disputed the debt with Home Point. Consequently, Home Point should have updated Plaintiff's credit file to show that the debt was disputed. Yet, Plaintiff's credit reports do not show the debt as disputed.

**15 USC § 1692e(10):** "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Supporting Facts: All the reasons listed above also show the deception.

**15 USC § 1692f:** "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

<u>Supporting Facts:</u> Without the legal ability under the law and contract to foreclose, the threat to and actual advertising of the foreclosure sale date in a public newspaper violate Section 1692f and its example illustration of Section 1692f(6) as discussed next.

**15 USC § 1692f(6):** "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property;  or (C) the property is exempt by law from such dispossession or disablement."

<u>Supporting Facts:</u> Home Point certainly threatened to take non judicial action (foreclosure) to take ownership and possession of the home of the Otwells.  But there was no present right to do so as Home Point had failed to follow the proper steps to have the legal right to foreclose.

Home Point failed to send a proper default letter.  Which meant there could be no acceleration letter (and Home Point sent no such letter anyway).  Without a proper default letter (and then a proper acceleration letter), no foreclosure advertisement in the local newspaper could occur.

The testimony of Home Point at trial will be interesting to see if it intended to take the property (without the present right to do so) or if it had no intention (but lied about the intention)—either story by Home Point will violate Sections 1692f and the illustration Section 1692f(6).

**15 USC § 1692g:**  This section states:

(a) Notice of debt;  contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
   (1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;  and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Supporting Facts:  Defendant Home Point sent a letter to Plaintiffs on April 15, 2019, which suggested that the FDCPA might not be applicable to the letter. Such a representation is false as the FDCPA does apply to letters seeking to foreclose on property when there is no present right to foreclose and also applies when money is being demanded as this letter demanded.

The letter provides the required disclosure under 15 U.S.C. § 1692g(a) known as a validation notice and gives the consumer enhanced rights if a dispute is sent within 30 days of receipt of the validation notice. But the warnings are overshadowed or contradicted by the letter from Defendant Home Point (by and through its agent Rubin Lublin) which violates 15 U.S.C. § 1692g(b) as follows:

a. Suggesting repeatedly (at least in four places) that the FDCPA does not or may not apply which would mean the 15 U.S.C. § 1692g(a) rights are not in place for Plaintiffs

b. The notice also suggests that collection activity can occur before the expiration of the 30-day period that Plaintiffs had the right to dispute but it fails to say that if a dispute is made, then those collection activities must cease until the debt has been validated.

This could confuse the least sophisticated consumer about their rights under 15 U.S.C. § 1692g(a) and what actions, if any, they should take.

Defendant Home Point also violated 15 U.S.C. § 1692g in its inadequate verification in response to Plaintiffs' properly timed and described dispute letter requesting verification. Defendant Home Point gave Plaintiff the right to dispute and ask for verification in its (defective) April 15, 2019 letter. Plaintiffs exercised their rights under 15 U.S.C. § 1692g on April 25, 2019. This letter disputed the debt and requested verification in general and specifically on the default, the amount owed

and the breakdown thereof and if the foreclosure sale was not going to be cancelled (as requested in the letter), then the complete file including the note, mortgage, complete accounting of the loan, paid invoices, etc. While this request for verification was outstanding, the law allowed no collection activity by Defendant Home Point. But Defendant Home Point ignored the clear law and continued to conduct collection activity.

For example, on May 16, 2019, the foreclosure was advertised even though the request for verification had been received by Defendant Home Point back in April 2019. As threatened by Defendant Home Point in its validation letter, it did indeed take collection steps before the expiration of the 30-day time period. Even though Plaintiffs disputed and requested verification on April 25, 2019, which Defendant Home Point received the next day. The same is true on May 23, 2019 – collection activity without verification. And May 30, 2019. Defendant Home Point "responded" on June 7, 2019. But this response is woefully inadequate and deceptive.

<u>Damages</u>

The Otwells are claiming that they have suffered damages as a result of the conduct of Home Point and its employees.  The Fair Debt Collection Practices Act allows consumers such as the Otwells to be awarded damages for violations of the act as follows:

(1) any actual damage sustained by Otwells as a result of a violation of the Act, including out of pocket expenses and mental anguish and emotional distress;

(2) statutory damages up to but not exceeding $1,000;  or

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

**(d) Defendant's Position on Its Defenses.**

1.      RESPA violations

a. Danna Lee Otwell lacks standing to bring any claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, because she did not sign the

promissory note underlying the subject mortgage. *See Garrasi v. Selene Fin., LP*, 407 F. Supp. 3d 110, 117 (N.D.N.Y. Sept. 11, 2019) (collecting cases); 12 U.S.C. § 2605(f). Under RESPA, only those who are borrowers and personally obligated to pay the debt have standing. *Id.*

b. The Plaintiffs cannot recover statutory damages under RESPA because there is no evidence in this case of any pattern or practice of noncompliance of RESPA by Home Point, as is required to obtain statutory damages under 12 U.S.C. § 2605(f)(1)(B).

c. **Claim under 12 C.F.R. § 1024.41:** Home Point contends that this claim fails for a number of reasons:

    i. It is expected that evidence may show that any application that was submitted that resulted in the Trial Period Plan and FHA Partial Claim was not the Otwells' first application. *See* 12 C.F.R. § 1024.41(i). In their Counterclaims filed in the Ejectment Suit, the Otwells stated that they "made a valid request for loss mitigation on several occasions" and that Stonegate "denied the loss mitigation requests improperly."

    ii. Assuming that a complete *first* loss mitigation application is at issue in this case, Home Point complied with the requirements of 12 C.F.R. § 1024.41. The Otwells contend that Home Point violated 12 C.F.R. § 1024.41(c)(ii). The evidence will show that Home Point did provide notice in writing on August 24, 2018, to Joshua Otwell with its determination that he is being offered a trial modification. This letter contained a due date for acceptance of the offer. Contrary to the Otwells' contention, no information about appeal rights was required in this letter since the loss mitigation application was not denied.

    iii. Any permanent modification offer subsequent to the trial period plan was not subject to any requirements of

12 C.F.R. § 1024.41. The plain language of § 1024.41(c)(ii) refers only to the initial response to the loss mitigation application that must be within 30 days of receipt of the application.

iv. Home Point contends that 12 C.F.R. § 1024.41 has no application because the loss mitigation application was received after a foreclosure sale that was rescinded as part of the settlement of the Ejectment Suit. The requirements of the regulation only apply if an application is received more than 37 days before a foreclosure sale. *See* 12 C.F.R. § 1024.41(c)(1).

v. Home Point did send final modification documents to the Otwells on December 14, 2018. The evidence is expected to show that Joshua Otwell was notified, in a cover letter and by telephone, that the documents needed to be executed and returned by December 29, 2018. Further, the evidence is expected to show that The Otwells did not sign the documents on time. The evidence is also expected to show that on January 3, 2019, Home Point called Joshua Otwell to advise that he did not return the documents on time, and told Home Point that his attorney was reviewing the documents before signing. On February 19, 2019, Home Point sent a letter to Joshua Otwell advising that he did not qualify for a modification due to his failure to return the signed modification documents. This letter also advised Joshua Otwell of his right to appeal, but he never did so and never contacted Home Point regarding the final modification documents.

vi. The Otwells possess no admissible evidence to prove that they reached out to Home Point for an explanation of the loan modification they were provided. The Otwells' attorneys cannot testify in the case and provide the testimony necessary to remove conditions of hearsay from emails they claim were exchanged

with Home Point's attorneys. Moreover, the attorneys that represented Home Point in the eviction case against the Otwells are clearly not the correct points of contact for explanation of the nuances of the FHA Partial Claim offered by Home Point after the eviction case was settled and dismissed.

vii. The Otwells have not incurred any damages recoverable under RESPA, and if they did they were exclusively caused by their own failure to return the loan modification provided. *See McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (borrower has burden of proof on damages and can only recover damages proximately caused by RESPA violation).

viii. Even if Home Point did not include a letter with the final modification documents that indicated a due date or instructions of what to do with the documents, the evidence is expected to show that Home Point called Mr. Otwell to explain the documents and provide a deadline to returning them. As such, the lack of any such letter with instructions or a due date is not the proximate cause of any of the Otwells' claimed damages.

ix. Home Point did not fail to fairly evaluate the loss mitigation application. They were provided the exact form of loan modification called out by the trial period plan that Joshua Otwell signed.

x. Home Point did not fail to disclose the real reason the Otwells were denied mitigation, as they were not denied mitigation. They were provided the exact form of loan modification called out by the trial period plan that Joshua Otwell signed.

2.      FDCPA violations

a.  All claims under the FDCPA fail because Home Point is the owner and holder of the Loan, Note, and Mortgage, and thus has been seeking to collect debt owed to itself. Therefore, it is a creditor and not subject to the Fair Debt Collection Practices Act ("FDCPA"). *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015). To the extent that Home Point's status as a creditor does not negate it from also being a debt collector, the Otwells do not have evidence showing that Home Point qualifies as a debt collector under the FDCPA. Additionally, Home Point cannot be held vicariously liable for any actions taken by Rubin Lublin, LLC, as is alleged in the Amended Complaint, because Home Point itself is not a debt collector, but a creditor. *See Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 953 (11th Cir. 2016) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Bent v. Smith, Dean & Assocs., Inc.*, No. 3:11-cv-66-J-TEM, 2011 WL 2746847, at \*3 (M.D. Fla. July 14, 2011)).

b.  Any FDCPA claims premised on the allegation that a notice of acceleration was not sent fail because Rubin Lublin, LLC, on behalf of Home Point, sent a letter to each Plaintiff on or around April 15, 2019, titled "Notice of Acceleration and Foreclosure", which stated, in part, that "[t]he indebtedness secured by said Mortgage has been and is hereby declared due because of default under the terms of said Mortgage and Note." Additionally, any FDCPA claims premised on the allegation that the notice of default was somehow deficient fail because the Mortgage does not require any notice of default to be sent.

c.  **Claim under 15 U.S.C. § 1692c(a)(2):** No evidence has been presented thus far to support the assertion that Home Point

was notified in March 2019 that the Otwells were represented with respect to this particular debt. The evidence is expected to also show that Home Point has no record of ever being advised in March 2019 that the Otwells were represented by counsel. Additionally, the evidence will show that Rubin Lublin, LLC sent a letter to the Otwells in April 15, 2019, that included a statement that "[w]e do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel." The Otwells responded to this letter, but did not state that they were represented by counsel.

d. **Claim under 15 U.S.C. § 1692d:** This claim fails because Home Point did not threaten foreclosure without a right to do so. The Loan and Mortgage were undisputedly in default, a default notice was sent (although not required by the terms of the Mortgage), and a notice of foreclosure was sent and published. Additionally, contrary to the Otwells' contention, foreclosure was not threatened while they were paying on the trial period plan. The trial period plan was for three months only, until December 2018, and the notice of default was not sent until February 2019. To the extent that this claim is based on the FHA Partial Claim documents, the claim fails for two reasons. First, these documents did not demand the payment of any debt as required for a communication to be "in connection with the collection of any debt." *See Hunstein v. Preferred Collection and Mgmt. Servs., Inc.*, 994 F.3d 1341, 1349 (11th Cir. 2021) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012); *Caceres v. McCalla Raymer*, 755 F.3d 1299, 1301-03 (11th Cir. 2014). Second, the FHA Partial Claim documents in no way can be construed as having "the natural consequence . . . to harass, oppress, or abuse any person in connection with the

collection of a debt." 15 U.S.C. § 1692d. "Although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury . . . Congress has indicated its desire for courts to structure the confines of § 1692d. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (citing *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)). And courts have dismissed § 1692d claims as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor. *See, e.g., Jeter*, 760 F.2d at 1179." *Wood v. Midland Funding, LLC*, 698 F. App'x 260, 265 (6th Cir. 2017).

e. **Claim under 15 U.S.C. § 1692d(3):** This claim fails because the lawful publication of a foreclosure notice under state law is not the type of conduct that is prohibited by this section of the FDCPA. "Although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury . . . Congress has indicated its desire for courts to structure the confines of § 1692d. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (citing *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)). And courts have dismissed § 1692d claims as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor. *See, e.g., Jeter*, 760 F.2d at 1179." *Wood v. Midland Funding, LLC*, 698 F. App'x 260, 265 (6th Cir. 2017). In *Wood*, the Court noted that "we have never sanctioned as actionable compliance with a court order to obtain service." In the same vein, compliance with the terms of the Mortgage and state law to foreclose cannot be the type of conduct that is prohibited by § 1692d.

f. **Claim under 15 U.S.C. § 1692e:** The Plaintiffs assert that this claim is based on Home Point threatening to foreclose when it had no intention of doing so and also failed to send the proper notices. The evidence will show that Home Point fully intended to complete the foreclosure sale and that all notices were properly sent. The Mortgage does not require

any notice of default or notice of acceleration to be sent, although both were sent in this case. To the extent that this claim is based on any alleged deceptive or misleading representations, this Court is required to "employ the 'least-sophisticated consumer' standard to evaluate whether a debt collector's communication violates § 1692e of the FDCPA." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). Under this standard, Home Point contends that the least sophisticated consumer would not be deceived or misled by any of the communications at issue in this claim. Lastly, to the extent that this claim is based on April 15 and June 7 letters sent by Rubin Lublin, LLC, Home Point cannot be held vicariously liable for the actions of Rubin Lublin, LLC.

g. **Claim under 15 U.S.C. § 1692e(2):** The letters at issue, sent on February 19 and February 21, 2019, are not inconsistent with each other, and the payment history shows that there were certain payment applications that took place on February 20, 2019.

h. **Claim under 15 U.S.C. § 1692e(4):** This claim fails because Home Point fully intended to follow through with the foreclosure sale and sent all proper notices to legally do so. The Otwells claim that Home Point "failed to send the proper default letters and was thus not authorized under law or the mortgage to accelerate the loan." However, not only was a default notice sent, but the Mortgage does not require any such notice.

i. **Claim under 15 U.S.C. § 1692e(5):** This claim fails because Home Point fully intended to follow through with the foreclosure sale and sent all proper notices to legally do so. The Otwells claim that Home Point "failed to send the proper default letters and was thus not authorized under law or the mortgage to accelerate the loan." However, not only was a default notice sent, but the Mortgage does not require any such notice.

j.  **Claim under 15 U.S.C. § 1692e(8):** This claim fails because the Otwells never "disputed" the debt. The letter sent by the Otwells on April 25, 2019, to Rubin Lublin, LLC, merely said that they were confused and "believe an error has been made" but never directly disputed the debt. Additionally, it is believed that the Otwells cannot claim any actual damages as a result of the alleged violation of § 1692e(8), as simply marking "disputed" on a credit report would likely have no impact whatsoever.

k.  **Claim under 15 U.S.C. § 1692e(10):** There are no allegations set forth by the Plaintiffs that Home Point attempted to "obtain information concerning a consumer", let alone by "the use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." Home Point asserts that there is no evidence known to it or otherwise produced in this litigation that shows any attempts to obtain information about the Plaintiffs.

l.  **Claim under 15 U.S.C. § 1692f(6):** This claim fails because Home Point had the legal right—as holder the Note and Mortgage—to foreclose the Mortgage, and all proper notices were sent. The Plaintiffs contend that "Home Point failed to send a proper default letter" and no acceleration letter was sent, but the Mortgage does not require either notice, and moreover, both notices were sent anyway.

m.  **Claim under 15 U.S.C. § 1692g:** This claim fails first and foremost because it is based upon letters sent by Rubin Lublin, LLC. As noted above, Home Point cannot be vicariously liable for any actions of Rubin Lublin, LLC. The claim further fails because the response to the validation letter fully complied with § 1692g, as it contained a copy of the payment history. *See Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014) ("[T]he cases reflect that an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing [verification of the debt].").

Additionally, any statements that the FDCPA may apply, not that it does apply, is not a violation of § 1692g, especially as there is no proof that Rubin Lublin, LLC is a debt collector. It also does not overshadow the consumer's right to request validation of the debt, as the least-sophisticated consumer would not be deceived or misled when the clear and unequivocal language in the letter provides that the consumer may request validation of the debt, without any qualifications. In fact, the Otwells did send in a letter to request validation, so they cannot claim to have been damaged by any alleged overshadowing. Additionally, Home Point contends that continuing to publish foreclosure notices is not "collection activity" within the meaning of § 1692g(a). The foreclosure advertisements relate solely to the enforcement of a security instrument and do not, in any way, demand money or seek to collect money.

6.    Discovery and Other Pretrial Procedures.

   (a) Pretrial Discovery.

   i.    _____x_____    Pursuant to previously entered orders of the court, discovery is closed.

   ii.    _____    The parties are given leave to proceed with further discovery provided it is commenced in time to be completed by

   (b) Pending Motions.

      None.

   (c) Motions *In Limine*. Motions *in limine* must be filed on or before **July 19, 2021** and shall be accompanied by supporting memoranda. As to each matter

counsel seeks to exclude, counsel shall indicate whether the exclusion is "opposed" or "unopposed" by counsel for the other side. Parties are encouraged to resolve evidentiary issues by stipulation whenever possible. Responses in opposition to the motions *in limine* must be filed on or before **July 29, 2021**.

The parties must provide the court with a courtesy copy of each motion *in limine* and each response to a motion *in limine*, including corresponding exhibits. Each page must be three-hole punched and securely bound in a three-ring binder or a large clip, with tabs separating each exhibit. Courtesy copies should reflect the CM/ECF case number, document number, date, and page stamp on each page.

7. <u>Trial Date</u>.

(a) This case is set for Jury trial on August 23, 2021. This case will be ready for trial on or after August 23, 2021.

(b) The trial of this matter is expected to last 3 to 4 days.

8. The parties are to comply fully with each provision contained in Exhibit A – Standard Pretrial Procedures which is incorporated into this order by reference as if fully set forth herein.

9. The parties are to read and comply fully with each provision contained in Exhibit B – Guidelines for Conduct of Trials, which is incorporated into this order by reference as if fully set forth herein.

The court **ORDERS** that the above provisions be binding on all parties unless modified for good cause shown.

**DONE** and **ORDERED** this June 25, 2021.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE